ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 14 2012, 11:32 am

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 84S04-1103-PC-161

KEVIN L. HAMPTON,                    *Appellant (Defendant below),*

v.

STATE OF INDIANA,                    *Appellee (Plaintiff below).*

Appeal from the Vigo Superior Court, No. 84D06-0808-PC-2678
The Honorable Michael J. Lewis, Judge

On Transfer from the Indiana Court of Appeals, No. 84A04-1002-PC-122

**February 14, 2012**

**Dickson, Justice.**

We affirm the denial of the defendant's post-conviction claim of ineffective assistance of appellate counsel but hold that an instruction on the requirement of proof beyond a reasonable doubt does not obviate the necessity, where the conduct of the defendant constituting the commission of a charged offense is proven exclusively by circumstantial evidence, of an additional jury instruction advising the jury that proof by circumstantial evidence must be so conclusive and sure as to exclude every reasonable theory of innocence.

The defendant was convicted of murder, rape, and criminal deviate conduct following the

brutal death of D.L. in Terre Haute, Indiana, in 2000. On direct appeal, the defendant challenged the sufficiency of evidence, the denial of his motion for mistrial, and the structure and length of his sentence, but he did not claim ineffective assistance of counsel. The Court of Appeals affirmed the convictions and resulting sentences. Hampton v. State, 873 N.E.2d 1074 (Ind. Ct. App. 2007), *trans. not sought*. The defendant next sought post-conviction relief asserting that his appellate counsel's failure to challenge the refusal of a tendered instruction constituted an unconstitutional deprivation of his right to the effective assistance of counsel. The post-conviction court denied relief, finding that the trial court refused the tendered instruction because it believed that the State presented direct evidence at trial, namely DNA evidence. Findings of Fact, Conclusions of Law and Order, Appellant's App'x at 76. Additionally, the post-conviction court found Indiana precedent unclear regarding the question as to whether DNA evidence is "direct" or "circumstantial" evidence, *id.* at 81–83, and concluded that the decision of the defendant's appellate counsel to pursue other issues on direct appeal did not constitute ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Findings of Fact, Conclusions of Law and Order, Appellant's App'x at 76.

In appealing a denial of post-conviction relief, the defendant has asserted a single claim: that his appellate attorney rendered constitutionally ineffective assistance of counsel by failing to assert on direct appeal that the trial court erred in refusing, over defense objections, to instruct the jury that "[w]here proof of guilt is *by circumstantial evidence only*, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence." *See* Ind. Pattern Jury Instruction—Criminal 12.01 (Indiana Judges Association, 2d ed. 1991) (emphasis added).[1] (This instruction has often previously been given

---

[1] The jury was instructed regarding the nature of direct and circumstantial evidence through Indiana Pattern Jury Instruction 12.01. The trial court thus read the following to the jury, but omitted the final sentence (emphasized below):

> Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact.
> Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn.
> An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts.
> It is not necessary that facts be proved by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof. *Where proof of guilt is by circumstantial ev-*

2

using the word "hypothesis" instead of "theory," but we favor "theory" as more understandable to jurors. *See, e.g.*, 2 W.W. Thornton, *Instructions to Juries* §§ 2312–13 (1914).) The defendant's post-conviction argument is based on the premise that the DNA evidence presented in his case was not direct but circumstantial evidence, thus compelling the use of the rejected instruction. The DNA evidence, collected from vaginal swabs and from the victim's tank top, was consistent with a profile of the defendant's DNA "to a degree of scientific certainty." Trial Tr. at 527, 1001. The State has responded with multiple arguments: (a) that the defendant's appellate counsel properly omitted this issue on appeal because his trial counsel had referred to the DNA evidence at issue as direct rather than circumstantial evidence, and thus the issue was waived and not available for appellate challenge; (b) that it was reasonable for defense trial counsel to view the DNA evidence as direct evidence, and, therefore, an appellate challenge to this view would have little likelihood of success; (c) that, because the challenged instruction is not required when there is direct eyewitness identification or a defendant's confession, it should not be required when there is DNA evidence for the same reasons; and (d) that, even if the appellate defense counsel's performance was deficient, no prejudice resulted because the jury was otherwise properly instructed on reasonable doubt.

The Court of Appeals affirmed the denial of post-conviction relief, believing that the "instruction on proof beyond a reasonable doubt . . . nicely covered the issue and rendered harmless any potential error" in refusing the tendered instruction. Hampton v. State, 936 N.E.2d 1274, 1276–77 (Ind. Ct. App. 2010). Although we ultimately reject the defendant's claim of post-conviction court error, we granted transfer to provide clarification for the bench and bar regarding the "reasonable theory of innocence" instruction because we disagree with the Court of Appeals that the giving of a conventional reasonable doubt instruction renders unnecessary the giving of the "reasonable theory of innocence" instruction.

---

*idence only, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence.*

Ind. Pattern Jury Instruction—Criminal 12.01 (emphasis added).

## 1. Instructing Juries to Use Caution when Evidence is Circumstantial

*A. Need for a Special Instruction*

The importance of a "reasonable theory of innocence" instruction is deeply imbedded in Indiana jurisprudence. Nichols v. State, 591 N.E.2d 134, 136 (Ind. 1992) (citing Sumner v. State, 5 Blackf. 579 (Ind. 1841)). Our cases have long recognized the need for such an instruction where appropriate. *See, e.g.*, Gambill v. State, 675 N.E.2d 668, 675 (Ind. 1996); Lloyd v. State, 669 N.E.2d 980, 985 (Ind. 1996); Stahl v. State, 616 N.E.2d 9, 11–12 (Ind. 1993); Myers v. State, 532 N.E.2d 1158, 1159 (Ind. 1989); Cox v. State, 475 N.E.2d 664, 666–68 (Ind. 1985); Spears v. State, 272 Ind. 634, 636–40, 401 N.E.2d 331, 334–35 (1980), *overruled on other grounds by* Hicks v. State, 544 N.E.2d 500 (Ind. 1989); McAdams v. State, 226 Ind. 403, 412, 81 N.E.2d 671, 675 (1948); Gears v. State, 203 Ind. 400, 407–08, 180 N.E. 592, 594–95 (1932); Wolfe v. State, 200 Ind. 557, 564–68, 159 N.E. 545, 547–49 (1928); Robinson v. State, 188 Ind. 467, 470–71, 124 N.E. 489, 490 (1919); Dunn v. State, 166 Ind. 694, 696–97, 78 N.E. 198, 198–99 (1906); Hampton v. State, 160 Ind. 575, 576–77, 67 N.E. 442, 442 (1903); Wantland v. State, 145 Ind. 38, 39–40, 43 N.E. 931, 932 (1896). "[T]his Court has never departed from the conviction that the ['reasonable theory of innocence'] standard is a proper one to be employed at the trial court and a defendant is entitled to an instruction to that effect." Spears, 272 Ind. at 638, 401 N.E.2d at 335.

We note that a number of more recent American appellate decisions appear to place less emphasis on the need for similar instructions. *See* Irene Merker Rosenberg & Yale L. Rosenberg, "Perhaps What Ye Say Is Based Only on Conjecture"—Circumstantial Evidence, Then and Now, 31 Hous. L. Rev. 1371, 1400–01 nn.121–22 (1995) (noting that at least twenty-nine states have eliminated a specific jury instruction on circumstantial evidence).[2] This trend sprang after the United States Supreme Court's decision in Holland v. United States, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150 (1954), in which the Court rejected a claim of reversible error for the refusal "to instruct [the jury] that where the Government's evidence is circumstantial it must be such as

---

[2] Our own research, state by state, revealed little change since the Rosenberg & Rosenberg article was published.

to exclude every reasonable hypothesis other than that of guilt." *Id.* at 139, 75 S. Ct. at 137, 99 L. Ed. at 166. Without extensive explanation, the Court concluded that "the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Id.* at 139–40, 75 S. Ct. at 137, 99 L. Ed. at 166. We understand Holland to hold that including an additional "reasonable theory of innocence" instruction is not required but not that it is constitutionally erroneous.

> [T]he Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. *Cf.* Hopt v. Utah, 120 U.S. 430, 440–41, 7 S. Ct. 614, 618–20, 30 L. Ed. 708 (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, *see* Jackson v. Virginia, 443 U.S. 307, 320, n.14, 99 S. Ct. 2781, 2789, n.14, 61 L. Ed. 2d 560 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. *Cf.* Taylor v. Kentucky, 436 U.S. 478, 485–86, 98 S. Ct. 1930, 1934–35, 56 L. Ed. 2d 468 (1978). Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." Holland v. United States, 348 U.S. 121, 140, 75 S. Ct. 127, 137, 99 L. Ed. 150 (1954).

Victor v. Nebraska, 511 U.S. 1, 5, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583, 590 (1994) (alteration in original).

Subsequent to Holland, opinions from several states began to conclude that a "reasonable theory of innocence" instruction incorrectly suggests that circumstantial evidence is inherently less reliable.[3] *See, e.g.*, State v. Humphreys, 8 P.3d 652, 661–62 (Idaho 2000); People v. Bryant, 499 N.E.2d 413, 420–21 (Ill. 1986); State v. Wilkins, 523 P.2d 728, 737 (Kan. 1974); State v. Lewisohn, 379 A.2d 1192, 1210 (Me. 1977); State v. Smith, 591 P.2d 664, 671–72 (N.M. 1979); State v. Jenks, 574 N.E.2d 492, 502 (Ohio 1991), *superseded by state constitutional amendment on other grounds as recognized in* State v. Smith, 684 N.E.2d 668 (Ohio 1997); Easlick v. State, 90 P.3d 556, 559 n.3 (Okla. 2004); State v. Roddy, 401 A.2d 23, 34–35 (R.I. 1979); State v. Gosby, 539 P.2d 680, 684–86 (Wash. 1975). Still other states reversed course by simply citing the Holland decision without any cogent analysis. *See* State v. Grippon, 489 S.E.2d 462, 464–67 (S.C. 1997) (Toal, J., concurring) (quoting Rosenberg & Rosenberg, *supra*, at 1402) ("[T]he

---

[3] For a discussion of this inclination see Rosenberg & Rosenberg, *supra*, at 1402 ("Many of the states following Holland do so without meaningful discussion of the issues presented, merely citing the Supreme Court decision, quoting its conclusory final paragraphs, and pointing to the growing number of states that have already eliminated the cautionary charge. These jurisdictions seem to regard the common law rule as no more than an antiquated doctrine waiting to be jettisoned in favor of the enlightened modern trend.").

widescale abandonment of the special circumstantial evidence charge has resulted mostly from a 'bandwagon effect' following Holland, rather than from a reasoned rejection of the longstanding rule.").

In contrast, however, numerous jurisdictions uphold the requirement of a "reasonable theory of innocence" instruction. For example, New York's high court explained:

> [T]he rule [requiring the instruction] draws attention to the fact that proof by circumstantial evidence may require careful reasoning by the trier of facts. By highlighting this aspect, the rule hopefully forecloses a danger legitimately associated with circumstantial evidence—that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree.

People v. Ford, 488 N.E.2d 458, 465 (N.Y. 1985) (citation omitted). Other jurisdictions continue to instruct that juries should consider whether circumstantial evidence excludes every reasonable hypothesis, explanation, or theory of innocence. *See, e.g.*, People v. Bacon, 240 P.3d 204, 225–26 (Cal. 2010); Davis v. State, 674 S.E.2d 879, 880–84 (Ga. 2009); State v. Percy, 822 So. 2d 823, 828 (La. Ct. App. 2002); People v. DeWitt, 433 N.W.2d 325, 329 (Mich. Ct. App. 1988); McInnis v. State, 61 So. 3d 872, 875–76 (Miss. 2011); State v. Steele, 211 N.W.2d 855, 867 (N.D. 1973); State v. Teague, 680 S.W.2d 785, 790 (Tenn. 1984).

We believe that discarding the "reasonable theory of innocence" jury instruction is unwise. While a criminal conviction may properly rest entirely upon circumstantial evidence, there is a qualitative difference between direct and circumstantial evidence with respect to the degree of reliability and certainty they provide as proof of guilt. Such a supplemental instruction is a safeguard urging jurors to carefully examine the inferences they draw from the evidence presented, thereby helping to assure that the jury's reasoning is sound. Additionally, it serves to "reiterat[e] the magnitude of the ['proof beyond a reasonable doubt'] standard to juries when the evidence before them is purely circumstantial." Nichols, 591 N.E.2d at 136. In this regard, the "reasonable theory of innocence" instruction informs the jury that if a *reasonable* theory of innocence can be made of the circumstantial evidence, then there exists a reasonable doubt, and the defendant is entitled to the benefit of that doubt.

Such a "reasonable theory of innocence" instruction, when appropriate, is not satisfied by the instruction on reasonable doubt. The State argues that our statement in Nichols—that the

"reasonable theory of innocence" instruction is a way of restating "proof beyond a reasonable doubt"—renders the instruction "duplicitous."[4] Appellee's Br. at 12. To the contrary, providing the jury with an additional cautionary instruction in evaluating circumstantial evidence not only supports but further enhances the concept of requiring proof beyond a reasonable doubt. It admonishes the jury to tread lightly where the evidentiary gap between logical certainty and guilt is more tenuous. For these reasons, we find it altogether appropriate that juries receive, where appropriate, a "reasonable theory of innocence" instruction in addition to the standard reasonable doubt instruction.

*B. Language of the Instruction*

This special advisement has traditionally been accomplished in Indiana by an instruction like the one rejected by the trial court in the present case. Language within Indiana Pattern Jury Instruction 12.01 provides: "Where *proof of guilt* is *by circumstantial evidence only*, it must be so conclusive in character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence." Ind. Pattern Jury Instruction—Criminal 12.01 (emphasis added). Effective juror comprehension and application, however, are compromised by impediments in the instruction's language—especially the uncertainties embedded in the phrases "proof of *guilt*" and "by circumstantial evidence *only*."

First, the instruction's language—that it applies where proof of "guilt" is "circumstantial only"—is potentially confusing. "Proof of guilt" could require that any evidence which supports an individual element of the charged offense be circumstantial, or it could require that all the ev-

---

[4] The State also relies on our opinion in McCurry v. State, 558 N.E.2d 817 (Ind. 1990), in support of this position. Appellee's Br. at 12. But the precedential value of language in McCurry regarding a "covering" instruction is not controlling. The case was decided on the basis of waiver because the asserted instruction error in McCurry was not properly preserved at trial. *Id.* at 819. Additionally, the language is contrary to our holdings in several subsequent cases, including Nichols. *See, e.g.*, Davenport v. State, 749 N.E.2d 1144, 1150 (Ind. 2001) (holding that refusal of a tendered instruction on circumstantial evidence was proper because the evidence was not solely circumstantial); Carr v. State, 728 N.E.2d 125 (Ind. 2000) (same); Gambill, 675 N.E.2d at 675 ("[A] defendant is entitled to an instruction which states that when proof of guilt is attempted by circumstantial evidence alone, the circumstances must exclude all reasonable hypothesis [sic] of innocence."); Lloyd, 669 N.E.2d at 985 (stating that a defendant is entitled to a "reasonable hypothesis" instruction when a case rests entirely on circumstantial evidence); Nichols, 591 N.E.2d at 136 (stating that the "reasonable hypothesis" instruction is necessary when the evidence presented at trial is "solely circumstantial").

7

idence related to all elements of a charge be circumstantial. *Compare* <u>Spears</u>, 272 Ind. at 636–40, 401 N.E.2d at 334–35 (finding sufficient absence of direct evidence to warrant "reasonable theory of innocence" instruction despite direct evidence that the defendant and the victim were fighting earlier in the evening and that the victim was later found unconscious in the hallway, and that he died from skull fractures likely caused when his head hit the floor), *with* <u>Davenport v. State</u>, 749 N.E.2d 1144, 1149–50 (Ind. 2001) (affirming refusal of "reasonable theory of innocence" instruction where victim died of strangulation and had thirty-nine injuries and witness observed defendant beating on the victim several hours earlier). In most criminal prosecutions, there is some direct evidence that the charged crime was committed by *someone*. Thus, if the phrase "by circumstantial evidence only" is construed to not require jurors to consider whether there exist reasonable alternative theories of innocence whenever the occurrence of a criminal offense is shown in part by direct evidence, then the instruction would rarely, if ever, be used. On the other hand, the *mens rea* element for a criminal offense is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof. Thus, requiring jurors to consider the possible existence of an alternate reasonable theory of innocence whenever proof of the *mens rea* element is circumstantial would lead to use of the instruction in most all criminal cases. *See* <u>Spears</u>, 272 Ind. at 639–40, 401 N.E.2d at 335 (requiring the "reasonable theory of innocence" instruction when circumstantial evidence is the exclusive proof of the *actus reus*[5] but not when used to prove the *mens rea*: "To hold otherwise would require a circumstantial evidence instruction in every case involving a crime containing the element of intent. Unnecessary confusion would result from such a course.").

From our review of jurisdictions employing an instruction similar to our "reasonable theory of innocence" instruction, we find no consistent approach to resolving these issues. Mississippi requires an instruction requiring the "exclusion of all reasonable hypotheses consistent with innocence" whenever there is any "direct evidence" such as "an admission or confession by the defendant to a significant element of the offense, or eyewitness testimony to the gravamen of the offense charged." <u>McInnis</u>, 61 So. 3d at 876 (emphasis omitted) (quoting <u>Kirkwood v. State</u>, 52 So. 3d 1184, 1187 (Miss. 2011)) (internal quotation marks omitted). In Michigan, juries are in-

---

[5] The Latin phrase "actus reus" refers to the "wrongful deed that comprises the physical components of a crime and that generally must be coupled with the *mens rea* [the criminal state of mind], to establish criminal liability." <u>Black's Law Dictionary</u> 41–42 (9th ed. 2009).

structed that "[i]f the *direct and circumstantial evidence, taken together*, is open to two reasonable constructions, one indicating guilt and the other innocence, it is your duty to accept the construction indicating innocence." DeWitt, 433 N.W.2d at 329 (emphasis added). But Tennessee calls for the instruction only when "the evidence is *entirely* circumstantial."[6] State v. Knight, 969 S.W.2d 939, 941–42 (Tenn. Crim. App. 1997) (emphasis added); *see also* Teague, 680 S.W.2d at 790.

Notwithstanding the strong support in Indiana case law for the concept of a "reasonable theory of innocence" instruction, in actual fact, the refusal of such instruction has rarely been found to be error, often based on the presence of evidence liberally deemed to be "direct" rather than "circumstantial." *See, e.g.*, Davenport, 749 N.E.2d at 1149–50 (finding direct evidence where son observed his mother being beaten by the defendant, sought to intervene but was struck by defendant and went to bed, and the next day the mother was found murdered by strangulation, which was not witnessed by the son); Clemens v. State, 610 N.E.2d 236, 243–44 (Ind. 1993) (finding direct evidence from the defendant's admission that he was present when the victim sustained his mortal injuries and the pathologist testified that those injuries must have been inflicted intentionally); Chapman v. State, 556 N.E.2d 927, 931 (Ind. 1990) (finding direct evidence from testimony of bank teller who identified defendant as person standing outside bank before the robbery, but who could not see the facial features to identify the hooded robber who perpetrated the robbery). While this Court in Spears, which reversed a murder conviction, evaluated the necessity of giving a "reasonable theory of innocence" instruction by considering whether there was any direct evidence showing the *actus reus* of a charged crime, rather than just direct evidence of any element of the crime, 272 Ind. at 636–40, 401 N.E.2d at 334–35, this distinction has not yet been applied in any of our ensuing cases. Other than Spears, we find no case from this

---

[6] *See* Tenn. Pattern Instruction—Criminal 42.03, TnCrimLaw, http://www.tncrimlaw.com/TPI_Crim/42_03.htm (last visited Feb. 13, 2012) ("When the evidence is made up entirely of circumstantial evidence, then before you would be justified in finding the defendant guilty, you must find that all the essential facts are consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; the facts must exclude every other reasonable theory or hypothesis except that of guilt; and the facts must establish such a certainty of guilt of the defendant as to convince the mind beyond a reasonable doubt that the defendant is the one who committed the offense.").

9

Court since 1928 that reversed a conviction due to a trial court's refusal to give a "reasonable theory of innocence" instruction. Landess v. State, 200 Ind. 440, 164 N.E. 267 (1928).[7]

These issues are not clarified by the present pattern instruction, which fails to clearly inform jurors whether the requirement of heightened scrutiny of circumstantial evidence applies only when there is a complete absence of direct evidence on *every* element of an offense, or when there is an absence of direct evidence with respect to a *significant* element or crucial component of guilt, or when there is an absence of direct evidence proving *any single* element of the charged statutory offense, or otherwise.

Second, the instruction unnecessarily calls upon the jury to determine whether evidence of guilt is "circumstantial." Such an evaluation is already the province of the trial judge in deciding whether such instruction is required in light of the nature of the evidence presented. Distinguishing between direct and circumstantial evidence as proof of a particular fact is a legal determination appropriate for judicial evaluation. It may require intricate legal analysis.

Direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Black's Law Dictionary 636 (9th ed. 2009). Conversely, circumstantial evidence is "[e]vidence based on inference and not on personal knowledge or observation." *Id.* Indiana case law has expressed it thusly: "Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact. Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn." Gambill, 675 N.E.2d at 675. And to explain the meaning of "inference," the jury in Gambill was further instructed: "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or

---

[7] For other cases from this Court rejecting a claim of error for refusal to give a "reasonably theory of innocence" instruction, see, e.g., Carr, 728 N.E.2d at 130–31; Lloyd, 669 N.E.2d at 985; Stahl, 616 N.E.2d at 11–12; Clemens, 610 N.E.2d at 243–44; Page v. State, 518 N.E.2d 1089, 1092–93 (Ind. 1988); Goolsby v. State, 517 N.E.2d 54, 62–63 (Ind. 1987); Armour v. State, 479 N.E.2d 1294, 1300 (Ind. 1985); Murray v. State, 479 N.E.2d 1283, 1288 (Ind. 1985); Cox, 475 N.E.2d at 666–68; Brendel v. State, 460 N.E.2d 919, 921–22 (Ind. 1984); Roarks v. State, 448 N.E.2d 1071, 1074–75 (Ind. 1983); Haynes v. State, 431 N.E.2d 83, 87–88 (Ind. 1982); Faught v. State, 271 Ind. 153, 161–62, 390 N.E.2d 1011, 1017 (1979); Hitch v. State, 259 Ind. 1, 11–12, 284 N.E.2d 783, 789 (1972); Turner v. State, 254 Ind. 195, 198–200, 258 N.E.2d 641, 642–43 (1970); Wolfe, 200 Ind. at 564–68, 159 N.E. at 547–49.

group of facts." *Id.* But every evidentiary assertion at trial is "direct evidence" of *something*. That is, it is a fact offered as true and if accepted by the jury as such, conclusively establishes that fact.

> In the grouping of circumstantial evidence, difficulty has arisen from not keeping in mind that most circumstantial evidentiary facts must ultimately in turn become themselves a proposition and be proved by "direct" evidence and also from confining the latter term to assertions of some main fact in issue. For example, the finding of a bloody knife upon the accused after a secret killing is a circumstance from which an important inference may be drawn; yet this fact of the finding must be proved by some person's assertion.

IA John Henry Wigmore, Evidence § 25, at 955 (Tillers rev. 1983) (footnote omitted). Thus, as another example, footprints or fingerprints that place an accused at the scene of a crime may be direct evidence of the accused's presence at some point in time but only circumstantial proof that the accused committed the charged offense.[8]

---

[8] The complexities of distinguishing direct from circumstantial evidence have received considerable academic attention. For example, some authorities distinguish between "direct" and "circumstantial" evidence based on the conclusion that the assertion is offered to prove. "Since the purpose of using evidence is to confirm or deny a proposed conclusion, it is the conclusion to which evidence must be related in order to define the types of evidence in functional terms." Lyman Ray Patterson, The Types of Evidence: An Analysis, 19 Vand. L. Rev. 1, 4 (1965). In simple terms, in a criminal trial that which the State seeks to prove (e.g., robbery) is the "proposed conclusion." For example, if the State seeks to prove that P robbed J, then eyewitness testimony, "I saw P rob J," if believed by the jury, can lead only to the conclusion that P robbed J. *See id.* "The evidence is direct evidence because it is the basis of a direct inference which coincides with the proposed conclusion, and the inference is the only inference relative to the proposed conclusion that can be properly drawn." *Id.* The following delineation is helpful: "Direct evidence is a proposition which is consistent *only* with either the proposed conclusion *or* its contradictory; circumstantial evidence is consistent with *both* the proposed conclusion *and* its contradictory." *Id.* at 5–6 (emphasis added).

> For example, if the proposed conclusion is that defendant and others robbed the victim, the victim's voice identification of the defendant as one of the robbers is consistent with only the proposed conclusion and is, therefore, direct evidence. Similarly, if the proposed conclusion is that the defendant and others robbed the victim, the defendant's testimony that he did not rob the victim is consistent with only the opposite of the proposed conclusion and is, therefore, direct evidence. On the other hand, testimony that the defendant was seen in the company of the robbers an hour before the robbery is consistent with both the conclusion and its opposite, i.e., it is consistent with both the defendant's guilt and his innocence. Although the testimony is relevant to the proposed conclusion, it is only circumstantial evidence of defendant's guilt.

Stubbs v. State, 463 S.E.2d 686, 688–89 (Ga. 1995) (emphasis omitted) (footnote omitted) (citations omitted).

11

C. *Reformulating the Use and Language of the Instruction*

To preserve our historic recognition that juries in criminal cases should be reminded to use particular caution when considering whether to find guilt based solely on crucial circumstantial evidence, we conclude that a special instruction is appropriate, but we reformulate the manner of use and language of the instruction. First, we find it inappropriate to include language burdening the jury with the task of deciding whether to apply the reasonable theory of innocence standard. Whether an instruction is supported by the evidence is a matter for the trial court to determine, and it need not be reevaluated by the jury. Second, because Indiana jurisprudence recognizes the importance of such an instruction in certain cases involving circumstantial evidence but our case law reveals a reluctance to find reversible error for failure to give the instruction if there is substantial direct evidence of guilt, we elect to apply the approach taken in Spears and direct that the "reasonable theory of innocence" instruction is appropriate only where the trial court finds that the evidence showing that the conduct of the defendant constituting the commission of a charged offense, the *actus reus*, is proven exclusively by circumstantial evidence. As discussed above, to deny the availability of a "reasonable theory of innocence" instruction whenever there is *any* direct evidence of the fact that a criminal offense has occurred, however, could render the instruction unlikely ever to be used, but requiring the instruction whenever there is *no* direct evidence of any single element would compel its use in almost all criminal cases because *mens rea* is often shown *only* by circumstantial evidence.

We thus hold that, when the trial court determines that the defendant's conduct required for the commission of a charged offense, the *actus reus*, is established exclusively by circumstantial evidence, the jury should be instructed as follows: *In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence.*

## 2. Denial of Post-Conviction Relief

In this appeal from the denial of post conviction relief, the defendant asserts that his appellate attorney rendered constitutionally ineffective assistance of counsel by failing to include

12

on direct appeal any challenge to the trial court's refusal to give the defendant's tendered jury instruction regarding "reasonable theory of innocence."

Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Ben-Yisrayl v. State, 738 N.E.2d 253, 258 (Ind. 2000). Post-conviction proceedings do not offer a super-appeal, "[r]ather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules." Stevens v. State, 770 N.E.2d 739, 746 (Ind. 2002) (citing P.-C.R. 1(1)); Ben-Yisrayl, 738 N.E.2d at 258. A claim of ineffective assistance of appellate counsel is a proper ground for post-conviction proceedings. Stevens, 770 N.E.2d at 746. Claims of ineffective assistance of appellate counsel are evaluated using the Strickland standard articulated by the Supreme Court. *Id.* at 760; Fisher v. State, 810 N.E.2d 674, 676 (Ind. 2004). "To establish a claim of ineffective assistance of counsel, a defendant must demonstrate to the post-conviction court that counsel performed deficiently and the deficiency resulted in prejudice." Lee v. State, 892 N.E.2d 1231, 1233 (Ind. 2008) (citing Strickland, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693).

This standard asks whether, "considering all the circumstances," counsel's actions were "reasonable[] under prevailing professional norms." Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694; Bieghler v. State, 690 N.E.2d 188, 193 (Ind. 1997). And even if appellate counsel's performance is deficient, "to prevail, petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different." Stevens, 770 N.E.2d at 760 (citing Bieghler, 690 N.E.2d at 194); *see also* Strickland, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). When evaluating a claimed deficiency in appellate representation due to an omission of an issue, a post-conviction court is properly deferential to appellate counsel's choice of issues for appeal "unless such a decision was unquestionably unreasonable." Bieghler, 690 N.E.2d at 194. Such deference is appropriate because the selection of issues for direct appeal "is one of the most important strategic decisions of appellate counsel." *Id.* (citing Ben-Yisrayl, 738 N.E.2d at 261). "Appellate counsel's performance, as to

13

the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to the appellate counsel." Ben-Yisrayl, 738 N.E.2d at 261. In crafting an appeal, counsel must choose those issues which appear from the face of the record to be most availing. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751–52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987, 994 (1983). Thus, to prevail in such claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing.

"When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." Fisher, 810 N.E.2d at 679. Thus, the defendant "must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." Stevens, 770 N.E.2d at 745. "In other words, the defendant must convince this Court that there is *no* way within the law that the court below could have reached the decision it did." *Id.* We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law. *Id.* at 746 (citing Ind. Trial Rule 52(A)); Fisher, 810 N.E.2d at 679.

In denying relief, the post-conviction court found (a) that the trial court considered the DNA evidence as direct evidence, thereby precluding the instruction, and (b) that, because Indiana precedent was unclear regarding whether DNA evidence should be considered "direct" or "circumstantial" evidence, the appellate defense counsel's choice not to pursue this issue on direct appeal did not constitute ineffective assistance of counsel.

The defendant's appeal asserts that the post-conviction court should have found that his appellate counsel was deficient for failing to raise on direct appeal the trial court's rejection of the tendered "reasonable theory of innocence" instruction and that the defendant suffered sufficient prejudice from such defective performance. The post-conviction court's denial of relief was essentially predicated on its conclusion (1) that, if the DNA evidence is considered direct rather

14

than circumstantial evidence (as the trial court found), then the tendered instruction was properly refused, and (2) that the characterization of DNA evidence is unclear under Indiana law, thereby providing a reasonable strategic basis for the appellate defense counsel to forego the issue on appeal. Whether the DNA evidence precluded the tendered instruction implicates both the deficient performance prong and the prejudice prong of the ineffective assistance analysis. If the trial court committed no error, then there is no defective performance in failing to claim such error on appeal. Likewise, if there was no error in rejecting the instruction, there would be no resulting prejudice from the failure to assert such an appellate claim. To evaluate the correctness of the post-conviction court's denial of relief, we turn to the issue of DNA and its characterization as direct or circumstantial evidence. This Court has never specifically addressed this issue, nor, apparently, have our sister states.[9]

In the present case, the evidence the State proffered at trial as "direct evidence" was DNA recovered from the crime scene and from the victim. Findings of Fact, Conclusions of Law and Order, Appellant's App'x at 75–76; Appellant's Br. at 4–6; Appellee's Br. at 7–8. The vaginal swabs taken from the victim revealed semen that matched the DNA of the defendant. Trial Tr. at 524–27; Findings of Fact, Conclusions of Law and Order, Appellant's App'x at 75–76. At the post-conviction trial, the State argued that the DNA is direct evidence of "identity," that the defendant was the perpetrator of the three charged offenses—murder, rape, and criminal deviate

---

[9] We find few cases that specifically address whether DNA is direct or circumstantial evidence: Thomas v. State, 824 So. 2d 1, 34–35 (Ala. Crim. App. 1999) (stating that DNA evidence is likely circumstantial without so holding), *overruled on other grounds by* Ex Parte Carter, 889 So. 2d 528 (Ala. 2004); Trower v. State, 867 So. 2d 1043, 1047 (Miss. Ct. App. 2003) ("The case law of Mississippi treats DNA evidence as a type of circumstantial evidence."). Trower unequivocally stated that DNA evidence is circumstantial, yet three years later the Mississippi Supreme Court said differently: "In addition to direct scientific evidence such as fingerprints and DNA, 'direct evidence has been held to include evidence such as eyewitness testimony, the defendant's confession to the offense charged, or the defendant's admission as to an important element thereof.'" Garrett v. State, 921 So. 2d 288, 292 (Miss. 2006) (citation omitted); *see also* Bennett v. State, 933 So. 2d 930, 948 (Miss. 2006) (utilizing the exact same language). Other courts have proceeded on the *assumption* that DNA evidence is circumstantial, while admitting that "circumstantial evidence is frequently more reliable and stronger than direct proof by eyewitness testimony." People v. Rush, 672 N.Y.S.2d 362, 364 (N.Y. App. Div. 1998) (holding that DNA evidence recovered from rape victim and matched to defendant was sufficient to uphold conviction); *see also* Haynes v. State, 127 S.W.3d 456, 461 (Ark. 2003) (holding that circumstantial evidence, DNA matched to defendant found on ski mask worn during crime, was sufficient to uphold conviction). Our own cases show a similar approach. *See, e.g.*, Jones v. State, 780 N.E.2d 373, 376 (Ind. 2002) (characterizing evidence from trial, including DNA matched to defendant, as circumstantial).

conduct. Post-Conviction Relief Hr'g Tr. at 16–17. On appeal, the State also argues that DNA could be regarded as direct evidence of rape by proving "that a person had sexual intercourse with the victim." Appellee's Br. at 10.

The defendant contends that DNA evidence must *always* be circumstantial because it establishes only a "statistical probability" that the defendant was the donor. Appellant's Br. at 13. This, the defendant argues, requires the jury "to infer that [the defendant] was indeed the donor." *Id.* We think, however, that the defendant's point goes to the weight and credibility of the evidence, and not to whether DNA evidence is direct or circumstantial. For example, if an eyewitness testifies to seeing the defendant commit the crime, yet on cross-examination admits that she is not "absolutely" positive of her identification of the defendant but is only "ninety-eight percent" positive that it was the defendant she saw, we would not say that her testimony is circumstantial evidence. Eyewitness testimony is considered direct evidence. *See* Nichols, 591 N.E.2d at 136–37. No inferential steps are involved, the jury must decide only whether to believe the eyewitness and, in so doing, what weight to give to her testimony. The eyewitness testimony is consistent *only* with the "proposed conclusion" that the defendant committed the crime. Her statement that she is "ninety-eight percent" positive of the identification goes to the credibility of her testimony. Expert testimony of a "high statistical probability" in matching DNA is much the same. That the DNA match may not be absolute goes to the weight and credibility of the evidence. But whether that expert testimony is direct or circumstantial is determined by the fact or facts which the evidence seeks to prove. The DNA evidence in this case was direct evidence only of the defendant's presence with the victim at some prior time, but only circumstantial as to the defendant's criminal conduct and requisite intent as to each of the charged crimes.[10]

As proof of the defendant's guilt with respect to the offense of rape,[11] the DNA evidence

---

[10] *See infra* note 12.

[11] In Indiana, the criminal offense of rape is defined as follows:

[A] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:
    (1) the other person is compelled by force or imminent threat of force;
    (2) the other person is unaware that the sexual intercourse is occurring; or
    (3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given;

requires the *inferential step* that intercourse was "compelled by force or imminent threat of force," or otherwise without the victim's consent without providing a basis upon which that inference may be made. *See* Ind. Code § 35-42-4-1(a). "Direct evidence is a proposition which is consistent *only* with either the proposed conclusion *or* its contradictory; circumstantial evidence is consistent with *both* the proposed conclusion *and* its contradictory." Lyman Ray Patterson, The Types of Evidence: An Analysis, 19 Vand. L. Rev. 1, 5–6 (1965). (emphasis added). In this context, the State asserts that DNA found in the victim and matched to the defendant, if accepted by the jury, is consistent *only* with the State's "proposed conclusion" that the defendant raped the victim. We disagree. This same evidence is *equally* consistent with the contradictory proposition that the defendant and the victim engaged in *consensual* intercourse.[12] To the extent that the DNA provided direct evidence of the defendant's presence or relationship with the victim at or before the time the crimes were committed, it was not direct evidence of the defendant's physical conduct comprising the *actus reus* of the charged offense of rape.

The same analysis applies to the role of the DNA evidence with respect to the crimes of murder and criminal deviate conduct in this case. As to both offenses, the DNA evidence, while consistent with a conclusion that the perpetrator of these crimes was the defendant, is simultaneously consistent with a conclusion that the defendant was at some point in the presence of the victim but did not "kill" her or force her "to perform or submit to deviate sexual conduct." Ind. Code § 35-42-1-1 (murder); Ind. Code § 35-42-4-2 (criminal deviate conduct).

Application of our analysis today leads us to conclude that the DNA evidence in the present case should be considered as circumstantial and not direct evidence of the defendant's conduct comprising the physical components of each of the charged criminal offenses (*actus reus*). On the other hand, such focus upon *actus reus* has not been the prevailing basis of prior Indiana case law, which had usually found the "reasonable theory of innocence" instruction properly rejected when any one element of a criminal offense has been proven by direct evidence. Under

commits rape, a Class B felony.

Ind. Code § 35-42-4-1(a).

[12] DNA evidence may not always be circumstantial. For example, if the victim were legally incapable of consent, such as a "child under fourteen years of age," the same type of DNA evidence offered in this case may be direct evidence of the *actus reas* for statutory rape. *See* Ind. Code § 35-42-4-3 (child molesting).

such line of authority, the rejection of the instruction would not have been error in the present case because of the direct evidence in this case proving that the victim was raped, murdered, and criminally sexually battered by someone, or the DNA direct evidence identifying the defendant as having a prior involvement with the victim. The existing state of the law could have led the defendant's appellate counsel to conclude that there was little if any merit in pursuing on appeal the refusal of the "reasonable theory of innocence" instruction. Due to past variations in application of the "proof of guilt" language in the "reasonable theory of innocence" instruction, the law on this issue was unfavorable to the defendant at the time of his trial and direct appeal.

We cannot conclude that the evidence before the post-conviction court leads unerringly and unmistakably to a decision contrary to the court's denial of the defendant's petition for post-conviction relief. Given the facts and the unfavorable state of the law, the defendant's appellate counsel did not fail to raise a strongly availing appellate issue by failing to challenge the trial court's rejection of the "reasonable theory of innocence" instruction, and thus the denial of post-conviction relief was not erroneous.

## Conclusion

We affirm the judgment denying the defendant's petition for post-conviction relief.

Shepard, C.J., and Sullivan, Rucker, and David, JJ., concur.