**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**EUGENE C. HOLLANDER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HENRY L. SHELL, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 52A04-1107-CR-370 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MIAMI CIRCUIT COURT
The Honorable Robert A. Spahr, Judge
Cause No. 52C01-1001-FB-1

**May 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Henry L. Shell, Jr., was convicted of Class B felony dealing in methamphetamine and Class D felony theft. He now appeals, arguing that the evidence is insufficient to support his conviction for dealing in methamphetamine and the trial court abused its discretion in refusing to give two of his tendered jury instructions. Finding that the evidence is sufficient to prove that Shell manufactured methamphetamine and the substance of Shell's tendered instructions was covered by other instructions given by the trial court, we affirm.

**Facts and Procedural History**

The facts most favorable to the verdicts are that Crop Production Services, a Miami County company, requested police assistance regarding theft from its anhydrous ammonia tanks. The Indiana State Police established a surveillance team and posted officers throughout CPS's remotely located facility. There were approximately eight officers involved in this surveillance operation, which included the use of night-vision goggles and thermal imaging.

A little after 1:00 a.m. on January 14, 2010, a pickup truck pulled up to CPS's anhydrous ammonia storage facility, and one person exited the truck. The officers did not see the person, who was wearing Carhartt-type clothing, carrying anything at this time. The person entered the fenced-in yard of the facility, quickly filled a pitcher with anhydrous ammonia, and ran out of the yard. The officers observed vapors rising from both the tank and the pitcher. The person then squatted down by a utility pole, set the pitcher down, and waited for a few minutes. The truck returned, picked up the person,

and left.  The officers followed and stopped the truck.  There were four people inside the truck, including Shell.  Shell, however, was the only person wearing Carhartt-type clothing, and an officer smelled a strong odor of anhydrous ammonia on his clothing.  In addition, according to one of the occupants of the truck, they dropped off Shell at CPS's anhydrous ammonia storage facility and later returned to get him.  Because no anhydrous ammonia was found in the truck, the officers returned to the utility pole where they had seen the person crouching and found the pitcher, which contained anhydrous ammonia and other ingredients used to manufacture methamphetamine, specifically, lithium and pseudoephedrine.  The ingredients were in the beginning stages of manufacturing.  The contents of the pitcher were later analyzed and determined to contain methamphetamine.

The State charged Shell with Class B felony dealing in methamphetamine (manufacturing) and Class D felony theft.  A jury trial was held in May 2011, during which the trial court instructed the jury on circumstantial evidence and the requirement of proof beyond a reasonable doubt.  *See* Appellant's App. p. 307, 308.  Shell was convicted as charged.  The trial court sentenced Shell to fourteen years for dealing in methamphetamine and three years for theft, to be served concurrently.

Shell now appeals.

**Discussion and Decision**

Shell raises two issues on appeal. First, he contends that the evidence is insufficient to support his conviction for Class B felony dealing in methamphetamine.[1] Second, he contends that the trial court erred in refusing two of his tendered instructions.

## I. Sufficiency of the Evidence

Shell first contends that the evidence is insufficient to support his conviction for Class B felony dealing in methamphetamine. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* When confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

In order to convict Shell of Class B felony dealing in methamphetamine as charged here, the State had to prove that he knowingly manufactured methamphetamine. Ind. Code § 35-48-4-1.1(a)(1); *see also* Appellant's App. p. 26. "Manufacture" means:

> (1) the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical

---

[1] Shell concedes in his reply brief that the evidence "technically" establishes theft. Appellant's Reply Br. p. 4. Accordingly, we do not address the sufficiency of the evidence pertaining to Shell's theft conviction.

4

synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. . . .

(2) the organizing or supervising of an activity described in subdivision (1).

Ind. Code § 35-48-1-18.

Shell argues that "there is no direct evidence that [he] had possession of lithium or pseudoephedrine pills, or, that he knowingly placed said items into the pitcher so that they could mix with the anhydrous ammonia to manufacture methamphetamine." Appellant's Reply Br. p. 5. We, however, find that the evidence is sufficient to prove that Shell manufactured methamphetamine. The officers saw a truck drop off one person dressed in Carhartt-type clothing. This person then entered the fenced-in yard of CPS's anhydrous ammonia storage facility, quickly filled a pitcher with anhydrous ammonia, and ran out of the yard. Vapors were rising from both the tank and the pitcher. The officers then tracked this single person to a utility pole, where he was seen crouching and hiding. When the same truck returned to pick up the person, the officers followed the truck and pulled it over. Shell was the only person in the truck wearing Carhartt-type clothing, and his clothes strongly smelled of anhydrous ammonia. Because there was no anhydrous ammonia in the truck, the officers returned to the utility pole, where they found the pitcher, which contained anhydrous ammonia, lithium, and pseudoephedrine in the early stages of manufacturing. In light of the facts that the officers saw only one person at CPS's anhydrous ammonia storage facility and the utility pole, Shell does not contest that he stole the anhydrous ammonia, *see id.* at 4, and the contents in the pitcher were in the early stages of manufacturing, the evidence is sufficient to prove that Shell manufactured methamphetamine. Shell's argument on appeal that "the 'pitcher' was

reasonably left by another individual on a previous occasion," *id.* at 3, is merely an invitation to reweigh the evidence, which we will not do. The evidence is sufficient to support Shell's conviction for Class B felony dealing in methamphetamine.

## II. Jury Instructions

Although Shell tacks on this issue to the end of his sufficiency argument, does not denote it as a separate issue, and cites no case law for the applicable standard, he contends that the trial court erred in refusing two of his tendered jury instructions. We choose to address this issue instead of finding waiver.

In reviewing a trial court's decision to give or refuse tendered jury instructions, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Chambers v. State*, 734 N.E.2d 578, 580 (Ind. 2000), *reh'g denied*. A defendant is only entitled to reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights. *Hero v. State*, 765 N.E.2d 599, 602 (Ind. Ct. App. 2002), *trans. denied*.

Here, Shell tendered the following two jury instructions:

If the evidence merely tends to establish a suspicion of guilt or the mere opportunity to commit the charged act, it is clearly insufficient to sustain a conviction.

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that an Accused committed crime. The State must prove all of the elements of the offense beyond a reasonable doubt, as given to you in that instruction, before you may find the accused guilty.

Appellant's App. p. 265-66, 271-72. The trial court refused both instructions because it found that they were covered by other instructions. We agree that the substance of Shell's tendered instructions was covered by other instructions given by the trial court. Specifically, the trial court instructed the jury on Shell's presumption of innocence, the State's burden of proof of beyond a reasonable doubt, and the definition of reasonable doubt. *Id.* at 306, 307. Accordingly, we conclude the trial court did not abuse its discretion in refusing to give Shell's tendered instructions.

Finally, Shell notes in his reply brief that after he submitted his Appellant's Brief in this case, the Indiana Supreme Court decided *Hampton v. State*, in which it held that an instruction on the requirement of proof beyond a reasonable doubt does not obviate the necessity, where the conduct of the defendant is proven exclusively by circumstantial evidence, of an additional jury instruction that proof by circumstantial evidence must be so conclusive and sure as to exclude every reasonable theory of innocence. 961 N.E.2d 480, 482 (Ind. 2012). Here, the trial court gave an instruction on circumstantial evidence that included language from the pattern jury instruction, "Where proof of guilt is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence." Appellant's App. p. 308. Our Supreme Court, however, disapproved of this language in *Hampton* and recommended different language:

> In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence.

7

*Hampton*, 961 N.E.2d at 491. This, however, does not mean that Shell is entitled to any relief. As noted by our Supreme Court in *Hampton*, the trial court's circumstantial-evidence instruction in this case was proper under the law existing at the time of Shell's May 2011 trial. *Id.* at 494. There is therefore no error in the trial court's circumstantial-evidence instruction in this case.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.