## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 11 2015, 10:39 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jonathan R. Sichtermann
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Bruce Jackson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 11, 2015

Court of Appeals Case No.
49A02-1410-CR-698

Appeal from the Marion County
Superior Court Criminal Division 16

Cause No. 49G16-1404-FD-02175

The Honorable Helen Marchal,
Judge

**Friedlander, Judge.**

[1] Bruce Jackson appeals his convictions of two counts of Intimidation[1], a class D felony, and Possession of Paraphernalia[2], a class A misdemeanor. Jackson presents the following restated issues for review:

1. Did the State present sufficient evidence to establish intimidation?
2. Was the evidence sufficient to sustain Jackson's conviction for possession of paraphernalia?

[2] We affirm in part and reverse in part.

[3] On April 26, 2014, Phillip Wright was working as the night manager at Allied Liquors on East 38th Street in Indianapolis. Joe Klein, the store owner, was also at the store working in his office. At approximately 1:00 a.m., Wright observed Jackson loitering outside in front of the store. Wright told Jackson he was not supposed to be there and asked him to leave the premises. Jackson told Wright that he would leave, and when Jackson was still in the parking lot twenty-five minutes later, Wright called the police.

[4] When the police arrived, Jackson was in the back seat of a vehicle with two women. The responding officer asked Jackson to exit the car, which he finally did, although he was agitated and angry. Another officer eventually handcuffed

---

[1] The version of the governing statute in effect at the time this offense was committed classified it as a class D felony. *See* Ind. Code Ann § 35-45-2-1 (West, Westlaw 2013). This statute has since been revised and in its current form reclassifies this offense as a Level 6 Felony. *See* I.C. § 35-45-2-1 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through March 24, 2015). The new classification, however, applies only to offenses committed on or after July 1, 2014. Because this offense was committed before that date, it retains the former classification.

[2] Ind. Code Ann. § 35-48-4-8.3 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through March 24, 2015)

Jackson because he would not calm down. After Jackson was in handcuffs, Wright and Klein came outside. Jackson began to yell at Wright and Klein that he was going to shoot Klein with an AK 47 assault rifle, cut off Wright's head, and shoot up the store. Police officers on scene repeatedly asked Jackson to stop yelling, but he did not stop for some time. Before transporting Jackson to jail, police conducted a search of his person, which revealed a brass fitting with a steel wool pad in Jackson's pocket. The officers knew these items to be typically used as a makeshift crack cocaine pipe.[3]

[5] Jackson was charged with two counts of class D felony intimidation, one count of invasion of privacy as a class A misdemeanor, one count of possession of paraphernalia as a class A misdemeanor, one count of trespass as a class A misdemeanor, and one count of class B misdemeanor disorderly conduct. On August 14, 2014, a jury found Jackson guilty on all counts. The trial court subsequently sentenced Jackson to a three-year aggregate sentence. Jackson now appeals.

1.

[6] Jackson argues there is insufficient evidence to sustain his two convictions of class D felony intimidation. Specifically, Jackson argues the evidence fails to establish

---

[3] The steel wool is used as a filter to prevent burning narcotic embers from being sucked into the body when the pad is lit.

that he intended to place the victims in fear when he made the statements. Our standard of review is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence— even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004).

*Bailey v. State,* 979 N.E.2d 133, 135 (Ind. 2012).

[7] To convict Jackson of intimidation as a class D felony the State was required to prove Jackson communicated a threat to Klein and to Wright with intent that they be placed in fear of retaliation for a prior lawful act, i.e., calling the police. *See* I.C. § 35-45-2-1(a)(2). As pertinent here, I.C. § 35-45-2-1(d)(1), (3) defines threat as, an expression, by words or action, of an intention to unlawfully injure the person threatened or another person, or damage property, or commit a crime.

[8] Jackson argues that although he threatened to commit a number of violent acts against Wright and Klein, he did not intend to place them in fear of bodily harm. Jackson asserts that he was simply, "engaging [in] verbal grandstanding." *Appellant's Brief* at 9.

[9] In *Brewington v. State*, the Indiana Supreme Court held that it does not matter whether the speaker intends to carry out the threat, but rather whether he intends

to "plac[e] the victim in fear of bodily harm or death." 7 N.E.3d 946, 963 (Ind. 2014) (quoting *Virginia* v. *Black*, 538 U.S. 343, 360 (2003)). A determination of intent is a *mens rea* determination that, "is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof." *Hampton v. State*, 961 N.E.2d 480, 487 (Ind. 2012). As for the inferential nature of circumstantial evidence, the *mens rea* determination will often depend on whether a reasonable person would recognize the statements threatening potential. *Brewington v. State* , 7 N.E.3d 946.

[10] Here, Jackson was agitated and angry from the initial encounter with the police officers. After being placed in handcuffs, he did not calm down or cooperate despite repeated requests by the officers. Jackson continued to yell, curse, and threaten for twenty-five to thirty minutes to commit violent acts towards Wright and Klein. Jackson threatened to return to the store and use an AK 47 to shoot Wright and to "shoot up" the store. *Transcript* at 99, 163. Jackson told Klein that he was "going to cut off his head and make him suck his own dick." *Id.* at 98. Jackson also told the police officers that they were going to have to come back and "recover[] bodies in body bags." *Id.* at 203. Klein testified that, "I believed what he said" and believed that the threats were meant to put him in fear of Jackson. *Id.* at 144. Jackson's specific statements, combined with his conduct, clearly implied credible threats to the victims' safety and were more than an outburst of frustration. *See Brewington v. State*, 7 N.E.3d 969. Based upon the foregoing, we conclude that there is sufficient evidence to sustain Jackson's convictions for class D felony intimidation.

Jackson argues that there is insufficient evidence to sustain his conviction for possession of paraphernalia because there is no evidence that he had specific intent to use the object to pass a controlled substance into his body. To convict Jackson of a class A misdemeanor possession of paraphernalia as charged, the State was required to prove that Jackson knowingly or intentionally possessed a raw material, instrument, device, or other object with the intent to introduce a controlled substance into his body. *See* I.C. § 35-48-4-8.3(a)(1), (b).

The intent to introduce a controlled substance into one's body may be inferred from circumstantial evidence. *See Dabner v. State*, 258 Ind. 179, 279 N.E.2d 797 (1972) (puncture marks over the veins of the defendant's forearm evincing recent injections, were sufficient to establish intent); *Trigg v. State*, 725 N.E.2d 446 (Ind. Ct. App. 2000) (residue-encrusted crack cocaine pipe found where defendant was sitting was sufficient to establish intent to use the pipe to smoke crack); *McConnell v. State*, 540 N.E.2d 100 (Ind. Ct. App. 1989) (expert testimony that paraphernalia contained drug residue was sufficient to establish intent). Intent may not be inferred, however, merely from proof that the instruments possessed were normally used or adapted for use with illegal drugs. *McConnell v. State*, 540 N.E.2d 755.

In *Taylor v. State*, the Supreme Court held that intent was not sufficiently established despite the evidence that the defendant possessed a hypodermic needle, an eye-dropper covered with an unknown sticky substance, a bottle cap that had been burned on the bottom, and an empty Excedrin bottle. 256 Ind. 170, 267 N.E. 2d 383 (1971). The Court observed "there was no evidence of flight or any other

behavior indicating consciousness of guilt." 256 Ind. 170, at 172, 267 N.E. 2d 383 at 385 (Ind. 1971). There was no evidence that the defendant had previous convictions for the use or possession of narcotic drugs. *Id.* Applying an earlier version of the statute,[4] the Court explained:

> To permit such a conviction [without proving intent] would be in effect to amend the statute. We assume the Legislature did not do a useless act in including the element of intent; if they had intended to punish the mere possession of adapted instruments they would not have included that element. The fact that the Legislature included the requirement that intent be proved necessarily implies that they recognized that there could be cases of possession of adapted instruments which would not be punishable under the statute.

*Id.*

[14] In the present case, the evidence showed Jackson was in possession of an adapted instrument commonly known to be used for ingesting drugs. The State, however, presented no evidence bearing on the element of intent. The State's only evidence was the testimony of Officer Drew Sedam, who has experience with over 100 cases involving narcotics, in which he identified the device. He further testified that the steel wool was burnt and blackened, meaning that it had been used. As noted above, however, mere possession of an adapted device does not establish the element of intent. The State did not introduce any evidence that Jackson was a crack cocaine user or had previous drug convictions. There is no evidence that he

---

[4] The statute discussed in *Taylor*, I.C. § 35–24–1–2 (1971), was repealed in 1976. P.L. 148–1976, Sec. 24. An earlier version of the statute under which Sluder was charged was added to the Indiana Code in the same Act. See P.L. No. 148–1976, Sec. 8.

was given a drug test, and he did not admit to being an addict or using a controlled substance. There is no evidence the adapted device contained any residue, and there is no evidence that it was tested to determine if it contained a controlled substance.

[15] Under these circumstances the State presented insufficient evidence to establish that Jackson intended to use the pipe to introduce a controlled substance into his body. Accordingly, we reverse his conviction for possession of paraphernalia.

[16] Judgment affirmed in part and reversed in part.

Baker, J., and Najam, J., concur.