**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**C. BRENT MARTIN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MITCHELL L. ROGERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1110-PC-1028 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph R. Pyle, III, Judge
Cause No. 48C01-0710-PC-513

**May 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Mitchell Lee Rogers appeals from the denial of his petition for post-conviction relief following his conviction for sexual battery as a class D felony, and criminal deviate conduct and battery, both as class B felonies. Rogers was also found to be a repeat sexual offender. Roger presents the following issues for review:

1. Did appellate counsel render ineffective assistance in failing to present a claim of double jeopardy violation?

2. Did appellate counsel render ineffective assistance in failing to challenge the trial court's exclusion of evidence of Rogers's prior sexual relationship with his victim?

We affirm in part, reverse in part, and remand with instructions.

In an unpublished memorandum decision affirming Rogers's convictions upon direct appeal, this court set out the underlying facts as follows:

> On October 16, 2001, the lock on A.F.'s door was broken and her apartment was burglarized. Landlord Douglas Burns agreed to repair the door the next day. In the meantime, A.F. was unable to lock her apartment door. A.F. was afraid to be alone in her unlocked apartment and tried unsuccessfully to contact family and friends to stay with her. A.F. contacted Rogers, an old friend from high school, and invited him to her apartment.
> Rogers arrived that evening, and the pair went to a local tavern. Two hours later, A.F. and Rogers returned to the apartment. When A.F. went to use the bathroom, Rogers walked in on her. A.F. told him that she would be out shortly, and he left the bathroom. As she walked out of the bathroom, Rogers asked A.F. for a hug, and she hugged him. Then, Rogers tried to pull A.F.'s jeans down while she attempted to pull them up. Rogers carried A.F. into the living room, placed her on her knees, and sodomized her. A.F. cried and asked him to stop. Rogers hit her in the face, told her to shut up, and held her down during the act.
> Afterwards, A.F. ran to her bedroom and locked the door. She stayed in her room until she heard Rogers leave the apartment. Then, A.F. went to the living room and found the contents of her purse on the floor and discovered that sixty or seventy dollars were missing. A.F. did not report the incident immediately to the police because she "wanted to forget about it and pretend that it didn't happen." Tr. at 65. A.F. was scared and upset for the remainder of the night and for several weeks thereafter. Early the next morning, Rogers

2

returned to A.F.'s apartment. He knocked on her door and told her that he needed to look for his jacket. A.F. threatened to call the police unless Rogers left the premises, and he immediately left.

A few hours later, Burns went to A.F.'s apartment to fix the door. A.F. told him that she had been sexually assaulted. Burns described A.F. as "emotionally upset, shaking, crying, and almost chain smoking." *Id.* at 97. He described A.F. as "very, very upset about the entire incident." *Id.* at 100. Burns reported the assault to the police.

The same day, Anderson Police Officer Chris Abshire interviewed A.F. She told him that she had been assaulted but refused to disclose Rogers's identity because she was scared. Several weeks later, Anderson Police Detective Darin Benson contacted A.F. A few days later, A.F. gave Detective Benson a videotaped statement identifying Rogers as her assailant and describing the assault. On November 5, 2001, A.F. submitted to a medical examination.

On March 22, 2002, the State charged Rogers with sexual battery, criminal confinement, criminal deviate conduct, battery resulting in bodily injury, and theft. … On October 3, 2003, the jury found Rogers guilty of sexual battery, criminal confinement, criminal deviate conduct, and battery. He was acquitted of the theft charge. Rogers admitted to a previous conviction for sexual battery and was adjudicated a repeat sexual offender. Rogers now appeals.

*Rogers v. State*, No. 48A02-0404-CR-377, slip op. at 2-4 (Ind. Ct. App. Sept. 14, 2004) (footnote omitted).

1.

Rogers contends that the post-conviction court erred in determining that appellate counsel did not render ineffective assistance in failing to challenge on double jeopardy grounds his conviction of both criminal deviate conduct and sexual battery. Post-conviction proceedings are civil in nature. Therefore, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Hampton v. State*, 961 N.E.2d 480 (Ind. 2012). Moreover, post-conviction procedures do not offer a super-appeal. Instead, "'subsequent collateral challenges to convictions must be based on grounds

3

enumerated in the post-conviction rules.'" *Hampton v. State*, 961 N.E.2d at 491 (quoting *Stevens v. State,* 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003)). A claim of ineffective assistance of appellate counsel is evaluated using the standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hampton v. State*, 961 N.E.2d 480. In order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice. *Id*. (citing *Strickland v. Washington,* 466 U.S. 668). In applying this standard, we ask whether, in view of all the circumstances, counsel's actions were "reasonable … under prevailing professional norms." *Strickland v. Washington,* 466 U.S. at 688. Our scrutiny of counsel's performance must be "highly deferential." *Hampton v. State*, 961 N.E.2d at 491 *(*quoting *Strickland v. Washington*, 466 U.S. at 689). Moreover, even if we deem appellate counsel's performance to be deficient, the petitioner will not prevail unless he demonstrates "a reasonable probability that the outcome of the direct appeal would have been different." *Id.* at 491.

"When evaluating a claimed deficiency in appellate representation due to an omission of an issue, a post-conviction court is properly deferential to appellate counsel's choice of issues for appeal 'unless such a decision was unquestionably unreasonable.'" *Id*. (quoting *Bieghler v. State,* 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)). Our Supreme Court expanded upon this particular issue in *Hampton*, as follows:

> Such deference is appropriate because the selection of issues for direct appeal "is one of the most important strategic decisions of appellate counsel." [*Bieghler v. State,*] 690 N.E.2d at 194. "Appellate counsel's performance, as to the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information

available in the trial record or otherwise known to the appellate counsel." *Ben–Yisrayl v. State,* 738 N.E.2d at 261. In crafting an appeal, counsel must choose those issues which appear from the face of the record to be most availing. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994 (1983). Thus, to prevail in such claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing.

*Id.* at 491-92.

A petitioner appealing from the denial of post-conviction relief stands in the position of one appealing from a negative judgment. *Id.* at 480. Therefore, the petitioner must convince us "'that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court.'" *Id*. at 492 (quoting *Stevens v. State,* 770 N.E.2d at 745). Put another way, we must be convinced "that there is *no* way within the law that the court below could have reached the decision it did." *Id.* (quoting *Stevens v. State,* 770 N.E.2d at 745) (emphasis in original). "We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law." *Id.*

Rogers contends his convictions of both criminal deviate conduct and sexual battery violate the double jeopardy proscription in the Indiana Constitution. The double jeopardy clause of the Indiana Constitution provides, in relevant part: "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Two or more offenses are the "same offense" if "'with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.'" *Sloan v. State*, 947 N.E.2d

5

917, 924 (Ind. 2011) (quoting *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999)) (emphasis in original). When applying this test, we are required to "'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective....'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State,* 761 N.E.2d 831, 832 (Ind. 200)). "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." *Id.*

At the hearing on Rogers's PCR petition, appellate counsel testified that he did not present a double jeopardy challenge with respect to the sexual battery and criminal deviate conduct convictions because the two were based upon two distinct acts. He explained that the sexual battery could have been premised upon Rogers's struggle to unzip A.F.'s jeans and his act of forcefully pulling them down to her knees. These acts occurred in the hallway just outside the bathroom and were separate and distinct from the anal rape that occurred after he carried her from there into the living room. Although the evidence may have supported a separate conviction for sexual battery based on this evidence, our examination of the charging information, jury instructions, and arguments of counsel leads us to discount the possibility that the jury's verdicts reflected the State's proffered analysis. The charging information for sexual battery contained a generic allegation that Rogers committed a forced touching of A.F. with the intent to arouse his sexual desires. It did not specify any particularized facts that would direct the jury's attention to any particular portion of Roger's attack upon A.F. The jury instructions were similarly non-specific.

The State's opening argument and questioning of witnesses did not correlate the

6

charge of sexual battery to actions in or near the bathroom. Further, the prosecutor's final argument is particularly problematic for the State's position upon appeal. Not only did it not link the sexual battery charge to the struggle in the hallway just outside the bathroom, i.e., Rogers's forceful unzipping and lowering of A.F.'s jeans, it affirmatively associated that charge with the anal rape, viz.:

> In this case the defendant has been charged with sexual battery. And I believe the legal definition that you guys are going to be given says that a person who with the intent to arouse or satisfy the person's own sexual desires or the desires of another person, touches another person when that person is, one, compelled to submit to touching by force of [sic] the imminent threat of force, or is mentally disabled or deficient that consent to the touching cannot be given, commits a sexual battery, Class B [sic] felony. The long and short of it, [A.F.] testified that the defendant had her, "bent over the van seat and he sodomized her." She told us that he ejaculated inside of her. She remembered semen and blood coming from inside of her after he was finished. She recalled how she struggled with him and she remembered … she said, "I didn't just let him do that. I couldn't do anything to stop him." *So we have Count I.*

*Direct Appeal Transcript* at 152-53 (emphasis supplied).

In the final analysis, there was surely evidence that a sexual battery occurred in the hallway that was separate and distinct from the criminal deviate conduct that occurred later in the living room. In reviewing the charging information, jury instructions, and – most especially – the arguments of counsel, however, we conclude that Rogers has demonstrated "a reasonable possibility that the evidentiary facts used by the fact-finder to establish" the elements of Rogers's criminal deviate conduct conviction were also used to establish the elements of his sexual battery conviction. *Sloan v. State*, 947 N.E.2d at 924. Therefore, the conviction for sexual battery cannot stand and must be vacated.

This conclusion does not end the matter, however. We note that the jury returned a

7

guilty verdict on Counts I and II, i.e., sexual battery and criminal confinement, respectively.

At sentencing, the trial court "merged" Count II with Count I, stating,

> Okay, the defendant has been found guilty of Count I, sexual battery, a D felony and he has also been found guilty of criminal confinement, a D felony and that is Count II, and I am going to show that those merge. So I and II merge and you are sentenced to under … say double jeopardy, double jeopardy by charge I guess, or at least the evidence … quite honestly there is one area of the law that is still pretty murky, it state double jeopardy [sic], but in any event this one is going to come out I think pretty good. … You are sentenced on Count I and II which merge to three (3) years at the Indiana Department of Correction.

*Direct Appeal Transcript* at 219. Having vacated the greater offense, we note that the lesser offense – the merged offense of criminal confinement – appears to remain. We say "appears" because the record does not contain the judgment of conviction, but instead merely the abstract of judgment. Our Supreme Court has held, "[i]t is the court's judgment of conviction and not the abstract of judgment that is the official trial court record and which thereafter is the controlling document." *Robinson v. State*, 805 N.E.2d 783, 794 (Ind. 2004). The abstract of judgment indicates in two places that the criminal confinement conviction "merged with Count I", but reflects no separate sentence for the merged conviction. *Appellant's Direct Appeal Appendix* at 110. The CCS entry related to the sentencing hearing states, in relevant part:

> Defendant having been found guilty by jury of Amended Count I, Sexual Battery, Class D Felony, defendant is sentenced to the Indiana Department of Corrections [sic] for a period of three (3) years executed, amended Count Count II, Criminal Confinement, Class D Felony, three (3) years executed, Court finds Count I and II merge.

8

*Id.* at 3.[1] The trial court's comments at the sentencing hearing are similarly vague. Without the ability to review the judgment of conviction, we are left to speculate somewhat as to whether formal judgment of conviction was entered against Rogers on the criminal confinement count, but the most reasonable interpretation of the material before us is that it was.

There is compelling authority for the view that the criminal confinement conviction should have been vacated, not merged.[2] *See, e.g., Mason v. State*, 532 N.E.2d 1169, 1171 (Ind. 1989) (the Court stated that is was "inappropriate" to merge a conviction and sentence for an inherently lesser offense into the greater offense; instead, the lesser conviction must be vacated), *cert. denied*, 490 U.S. 1049; *Townsend v. State*, 860 N.E.2d 1268, 1270 (Ind. Ct. App. 2007) (court held that it was not adequate for the trial court to "merge" a conviction for a factually included lesser offense, notwithstanding that the trial court did not sentence the defendant on the merged offense; rather, the offense "must be vacated"), *trans. denied*. Regardless, the fact remains that at this point, the criminal confinement conviction remains valid, albeit merged and arguably unsentenced. Now, however, we have another complication: the greater offense that subsumed the factually lesser-included offense has been vacated. What now?

---

[1] Ultimately, the trial court imposed a thirty-three year, executed sentence, including three years for the sexual battery conviction under Count I, twenty years for the criminal deviate conduct conviction under Count III, which was enhanced by ten years as a result of the repeat sexual offender adjudication, and one hundred and eighty days for the battery conviction under Count IV. The sentence for Count II was imposed consecutive to Count III, and concurrent with Count IV.

[2] In so noting, we express no opinion on the trial court's conclusion that the criminal confinement conviction did, in fact, violate double jeopardy vis-à-vis the sexual battery conviction. A case can be made that it did not.

Our Supreme Court delved into this subject in *Carter v. State*, 750 N.E.2d 778 (Ind. 2001). The defendant in that case was found guilty of three alcohol-related driving offenses: Count 1, operating a vehicle with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in one hundred (100) milliliters of the person's blood, a class C misdemeanor; Count 2, operating a vehicle while intoxicated, a class A misdemeanor; and Count 3, operating a vehicle while intoxicated with a previous conviction of operating while intoxicated within the five immediately preceding years, a class D felony. The verdicts on Counts 1 and 2 stemmed from a jury trial. After those verdicts were announced, the defendant waived his right to jury trial and Count 3 was tried to the bench. The court found the defendant guilty of Count 3. For double jeopardy reasons, the trial court entered judgment of conviction only upon Count 3.

Upon direct appeal, a different panel of this court affirmed the conviction but sua sponte remanded with instructions to vacate the guilty verdicts on Counts 1 and 2, which that panel referred to as "conviction[s]".[3] *Carter v. State*, 734 N.E.2d 600, 605 (Ind. Ct. App. 2000) *vacated,* 750 N.E.2d 778. The Supreme Court granted transfer and affirmed the resolution of the substantive issues presented by the defendant, but reversed the order to vacate the guilty verdicts on Counts 1 and 2, deeming it "unnecessary" to do so. *Carter v. State*, 750 N.E.2d at 778. The Court indicated that a jury verdict on which the court did not enter judgment is "unproblematic … in the double jeopardy context." *Id*. at 781. Further, the

---

[3]   As the Supreme Court explained in *Carter*, "conviction" has several meanings, one of which is consistent with the way the *Rogers* panel used it here, i.e., referring to a guilty verdict rendered by a jury. The term also refers to a judgment of conviction entered by a trial court. The Supreme Court explained, "a verdict by a jury and a judgment issued by a court are two rather different acts from which different consequences flow. They

Court noted that it may do more harm than good to vacate a jury verdict not reduced to judgment, especially if the greater offense is reversed "for reasons specific to the incremental elements between the greater and a lesser included offense." *Id*. at n.9. This, of course, refers to the prospect of reinstating the lesser offense upon reversal of the greater offense.

In *Carter*, the Court mentioned specifically entering judgment upon a guilty verdict not reduced to judgment by the court, but in so doing indicated that even a vacated guilty verdict could be reinstated, citing *Taflinger v. State*, 698 N.E.2d 325 (Ind. Ct. App. 1998). In *Taflinger*, the defendant was found guilty of attempted murder and neglect of a dependent. Citing double jeopardy concerns, the trial court entered judgment of conviction only on the attempted murder count. The State then moved to dismiss the neglect conviction rather than merge it with the attempted murder conviction. The trial court granted that motion. Later, this court reversed the attempted murder conviction on grounds of instructional error. Upon remand, there was no attempt to retry the defendant for attempted murder. Rather, the State filed an information charging the defendant with neglect of a dependent. Thereafter, the State filed a motion to reinstate the previously dismissed neglect conviction, which the trial court granted. The defendant appealed, contending "the trial court violated the prohibition against double jeopardy by imposing sentence on a verdict that had been previously dismissed. *Id.* at 326. This court identified the primary purpose of the double jeopardy clause as addressing the threat of multiple prosecutions, i.e., to prevent multiple trials for the same allegedly criminal conduct. The court cited the following rationale from *United States*

describe a two-tier process of verdicts or findings that are usually, but not invariably, followed by conviction and sentencing." *Carter v. State*, 750 N.E.2d at 780.

11

*v. Wilson*, 420 U.S. 332 (1975):

> The underlying idea ... is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Taflinger v. State*, 698 N.E.2d at 327-28 (quoting *State v. Monticello Developers, Inc.,* 527 N.E.2d 1111, 1112 (Ind. 1988)). This concern would not be implicated by the reinstatement of a verdict or conviction that was vacated because it was a lesser included offense and judgment of conviction was entered on the greater offense. Rather, the defendant was merely resentenced on a jury verdict that had been previously dismissed. The court explained:

> By reinstating the jury's verdict of guilty and sentencing [the defendant] accordingly, the trial court was not affording the State another opportunity to prove its case. The State had already convicted [the defendant] in a jury trial of neglect of a dependent child causing serious bodily injury. He was merely resentenced on a jury verdict that had been previously dismissed. Because [the defendant] was not threatened with nor subject to a reprosecution there was no double jeopardy bar.

*Id.* at 328. In the present case, the trial court merged the criminal confinement conviction with the sexual battery conviction, which we have vacated. Would conviction of both criminal confinement and criminal deviate conduct violate the double jeopardy clause, thus preventing reinstatement of the former charge on this basis?

Rogers was convicted of criminal confinement of A.F. as a class D felony. Therefore, the State was required to prove that he knowingly or intentionally confined A.F. without her consent. *See* I.C. § 35–42–3–3(a). The trial court informed the jury that the charging information alleged Rogers did "knowingly confine [J.R.] without that person's consent."

12

*Appellant's Direct Appeal Appendix* at 55. The trial court instructed the jury that to convict Rogers of criminal confinement as a class D felony, the State was required to prove beyond a reasonable doubt that Rogers knowingly or intentionally confined A.F. without her consent. Rogers was also convicted of criminal deviate conduct with respect to A.F. as a class B felony. Therefore, the State was required to prove that he knowingly or intentionally caused A.F. to perform or submit to deviate sexual conduct when she was compelled to do so by force or imminent threat of force. *See* I.C. § 35–42–2–2. The trial court informed the jury that the charging information alleged Rogers had knowingly or caused A.F. to perform or submit to deviate sexual conduct, i.e., anal intercourse.

The evidence necessary to establish the essential elements of criminal confinement was that Rogers confined A.F. against her consent. This element was not necessary to establish his commission of the criminal deviate conduct offense. Testimony established that Rogers struggled with A.F. in an attempt to unfasten and lower her jeans. Having successfully accomplished that, he then carried her against her will into a different part of the house. The criminal confinement was completed when he carried A.F. from one place to another. As charged, to establish that Rogers committed the offense of criminal deviate conduct as a class B felony, the State was required to prove that Rogers touched A.F.'s anus with his penis and did so by forcing A.F. to submit to the touching against her will and by force or threat of force. Proof of the touching was not an essential element to establish his commission of criminal confinement as a class D felony. Moreover, the evidence supports a reasonable inference that Rogers's confinement of A.F. was more extensive than necessary to commit the act of criminal deviate conduct. *See Williams v. State*, 889 N.E.2d 1274 (Ind. Ct.

App. 2008), *trans. denied.*

The charging information and relevant jury instructions do not shed light on whether the jury would have understood the confinement allegation as premised upon conduct separate and distinct from the conduct that formed the basis of the criminal deviate conduct conviction. There was, however, evidence that Rogers committed acts distinct from the anal rape of the victim such as would support a criminal confinement conviction that would not violate the double jeopardy clause. Specifically, the State presented evidence of the struggle between Rogers and the victim in the hallway just outside the bathroom, where she attempted unsuccessfully to fend off his effort to forcibly unfasten and lower her jeans. Moreover, the prosecutor stated during final argument:

> Count II, criminal confinement. And that says that a person is guilty of criminal confinement when a persons [sic] confines another person without the other person's consent. The long and the short of it. The testimony of [A.F.], "I struggled to squirm out from beneath his hands." Of course, if you don't buy that, the criminal confinement also consist [sic] of removing one person by force from one place to another. She said, "I turned left out of the bathroom and the defendant was standing there. He asked me for a hug." And she said, she reached up to give him a hug, and that is when he throws her over his shoulder like a rag doll and take [sic] her into the living room. She describes how her pants are at her knees. She is fighting with him. She is trying to get her pants up. And he takes her from the bedroom area into the living room against her will. We have Count II.

*Direct Appeal Transcript* at 154. As such, there is no reasonable possibility that the evidentiary facts used by the jury to establish the elements of the criminal deviate conduct conviction were also used to establish the elements of his criminal confinement conviction. *Sloan v. State*, 947 N.E.2d 917. Reinstatement of the criminal confinement conviction would not violate the double jeopardy clause and, therefore, consistent with the rationale espoused

14

in *Taflinger* and as discussed above, we reinstate it.

2.

Rogers contends appellant counsel rendered ineffective assistance in failing to challenge the trial court's refusal to allow evidence of Rogers's prior sexual relationship with A.F. The day before trial was to commence, Rogers submitted a motion to present evidence of what Rogers refers to on post-conviction relief as "a consensual one-night stand" that occurred ten years before these events transpired. *Appellant's Brief* at 14. The trial court denied that motion on grounds that the event was too remote in time to be admissible. Defense counsel did not seek to present the evidence at trial. Appellate counsel did not challenge the exclusion of this evidence on direct appeal. Appellate counsel testified that he did not challenge the preliminary ruling because he, too, believed the evidence was too remote to be admissible and therefore that the trial court's ruling was correct. Rogers claims this constituted ineffective assistance of counsel.

We reiterate that in order to prevail on this claim, Rogers must establish that this issue was one that a reasonable attorney would have thought availing. *Hampton v. State*, 961 N.E.2d 480. He must convince us that "there is *no* way within the law that the court below could have reached the decision it did." *Id.* at 492 (quoting *Stevens v. State,* 770 N.E.2d at 745) (emphasis in original).

Rogers sought to introduce the evidence in question to bolster his claim that the sexual activity between him and A.F. on the night in question was consensual. The trial court clearly deemed it inadmissible at least in part because it had occurred too long in the past. Although the precise basis of the exclusion of the evidence was not completely explained, we

15

note that a trial court's ruling on the admissibility of evidence will be upheld on appeal if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Gonser v. State,* 843 N.E.2d 947 (Ind. Ct. App. 2006).

> Rule 412 of the Indiana Rules of Evidence provides:
> **(a)** In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:
>
> > (1) evidence of the victim's or of a witness's past sexual conduct with the defendant;
> > (2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;
> > (3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or
> > (4) evidence of conviction for a crime to impeach under Rule 609.
>
> **(b)** If a party proposes to offer evidence under this rule, the following procedure must be followed:
>
> > (1) A written motion must be filed at least ten days before trial describing the evidence. For good cause, a party may file such motion less than ten days before trial.
> > (2) The court shall conduct a hearing and issue an order stating what evidence may be introduced and the nature of the questions to be permitted.
> > **(c)** If the state acknowledges that the victim's pregnancy is not due to the conduct of the defendant, the court may instruct the jury accordingly, in which case other evidence concerning the pregnancy may not be admitted.

Pursuant to this Rule, a party must give written notice ten days before trial of his or her intention to present evidence governed by this rule. Moreover, we have determined that this ten-day notice requirement applies "to both the general rule prohibiting the admission of past sexual conduct and the exceptions listed thereafter." *Sallee v. State*, 785 N.E.2d 645, 651 (Ind. Ct. App. 2003), *trans. denied.* The evidence Rogers sought to present fits within the exception set out in subsection (a)(1). Thus, even had appellate counsel appealed this ruling

on direct appeal, he would not have prevailed. As a result, Rogers cannot demonstrate the requisite prejudice. *See Hampton v. State*, 961 N.E.2d at 491 *(quoting Strickland v. Washington*, 466 U.S. at 689) (even if we deem appellate counsel's performance to be deficient, the petitioner will not prevail unless he demonstrates "a reasonable probability that the outcome of the direct appeal would have been different"). His claim of ineffective assistance of appellate counsel on this basis is without merit. *See Helton v. State*, 907 N.E.2d 1020 (Ind. 2009) (we need not address whether counsel's performance was deficient if we can dismiss an ineffective assistance claim on the element of prejudice).

To summarize thus far, we hold that Rogers's conviction of sexual battery must be reversed, but the other claim of ineffective assistance of appellate counsel is without merit and the remaining convictions are therefore affirmed. Moreover, the conviction for criminal confinement as a class D felony is reinstated. Because of this, Rogers's sentence must be revisited. At this point, we can either remand to the trial court for a new sentencing determination or we can reweigh the proper aggravating and mitigating circumstances independently and impose an appropriate sentence at the appellate level. *See Baber v. State*, 842 N.E.2d 343 (Ind. 2006), cert. denied, 549 U.S. 855. For reasons of judicial economy, we choose the latter option.

Understandably, neither party has included argument on the issue of sentencing. We note, among other things, that no challenge to the appropriateness of Rogers's sentence was presented on direct appeal. The only change wrought by this opinion is that we have vacated one class D felony conviction and replaced it by reinstating a different class D felony conviction. The trial court's identification and discussion of the aggravators and mitigators

and its explanation of why it chose the sentence it did with respect to the original judgment of conviction remains applicable, notwithstanding the substitution of the reinstated class D felony criminal confinement conviction for the vacated class D felony sexual battery conviction, and we summarily adopt it here. Accordingly, we conclude that Rogers's sentence will consist of three years for the class D felony criminal confinement conviction under Count II, twenty years for the class B felony criminal deviate conduct conviction under Count III, which is enhanced by ten years as a result of Rogers's adjudication as a repeat sexual offender, and one hundred and eighty days for the class B misdemeanor battery conviction under Count IV.[4] The sentence for Count II is to run consecutive to Count III, and concurrent with Count IV, for a total executed sentence of thirty-three years.

This cause is remanded with instructions to vacate the conviction for sexual battery and reinstate the conviction for criminal confinement as a class D felony, and to impose sentence consistent with the instructions set out above.

Judgment affirmed in part, reversed in part, and remanded with instructions.

MAY, J., and BARNES, J., concur.

---

[4] We note that the original abstract of judgment contains a scrivener's error indicating this is a class B felony, as opposed to a class B *misdemeanor*. Obviously, this error should be corrected on the new abstract of judgment.

18