

FILED

Apr 04 2019, 5:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Akram Abd, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 4, 2019 <br><br> Court of Appeals Case No. 18A-CR-780 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> Trial Court Cause No. 49G04-1605-MR-20444 |

**Baker, Judge.**

[1]     Akram Abd appeals his convictions for one count of Murder[1] and one count of Level 5 Felony Robbery,[2] arguing that (1) the evidence was insufficient to support the convictions; (2) the trial court improperly admitted character evidence when its prejudicial effect outweighed its probative value; and (3) the trial court erroneously provided an incomplete jury instruction. Finding that the evidence was sufficient and that there was no fundamental error regarding the evidence and the instruction, we affirm.

# Facts[3]

[2]     Mohamed Mahmoud, the victim in this case, owned a tax preparation business in Indianapolis called Taxesmart. Mahmoud attended the same mosque as Abd's father, Ziad Abd (Ziad), and helped him and Abd file their tax returns. In 2013, Ziad reported an income of $17,960, and Abd reported no income. In 2014, Ziad and Abd reported incomes of $9,600 and $9,905, respectively. In 2015, Ziad and Abd reported incomes of $9,558 and $10,077, respectively.

[3]     Abd and Ziad lived in the Sawmill Apartments complex in Indianapolis. Ziad was financing a black 2012 Toyota Camry, and Abd was financing a white 2012 Ford Taurus. The two were consistently late on rent, electric, and car payments

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-42-5-1(a).

[3] We held oral argument in this case at Taylor University in Upland, Indiana, on February 19, 2019. We thank both parties for their stimulating discussion, and we thank Taylor University, its faculty, and its students for their warm and generous hospitality.

for their entire stay. Additionally, Ziad and Abd maintained bank accounts with consistently negative balances.

[4] On February 3, 2016, Ziad and Abd were evicted and charged $3,881.37 for repairs and cleaning. The landlord stated that "[t]he apartment was very dirty" and that they had to "treat for roaches" and "double-coat the apartment for paint" because Ziad and Abd smoked. Tr. Vol. VII p. 61. The landlord also testified that Ziad and Abd were "pretty aggressive and verbally abusive" when he communicated with them. *Id*. at 52. Ziad and Abd later moved to the Cherry Glen Apartments complex, where they faced the same financial issues.

[5] On April 12, 2016, Ziad bought Duck Brand duct tape from Wal-Mart. On April 20, 2016, at around 11:19 p.m., Abd and Ziad drove and parked the white Ford Taurus in a school parking lot directly across the street from Taxesmart. A school employee notified police of a suspicious vehicle on the premises, and an officer was dispatched to the scene. At 11:37 p.m., Indianapolis Metropolitan Police Department Officer Daniel Eacret approached Ziad and Abd, who had exited the car, and asked them what they were doing. Abd said they were going to a nearby gas station, which they ultimately did. After Ziad and Abd returned to their vehicle and drove away, Officer Eacret left the scene at 12:18 a.m.

[6] At 1:37 a.m., Mahmoud closed Taxesmart and left the building. At 1:52 a.m., a white car arrived at the Airport Office Center in Indianapolis. At 2:09 a.m., the same white car and a black car left the Airport Office Center. At approximately 2:18 a.m., an individual unlocked the Taxesmart doors, entered the building,

and left a fingerprint on Mahmoud's safe. Later reports revealed that the fingerprint partially matched Abd's. The individual promptly left at 2:19 a.m., carrying something in his left hand. Cell phone records indicate that Ziad and Abd's phones may have been near Taxesmart on April 21, 2016, between 1:00 a.m. and 2:00 a.m. Additionally, the records show that the phones travelled in separate vehicles on that same day to Detroit, Michigan, and then back to Indianapolis a few days later.

[7] On the morning of April 21, 2016, an Airport Office Center employee discovered Mahmoud's body near a dumpster and called the police. A purple pillow case covered Mahmoud's head and was duct-taped around the neck. The pillow case was full of a "brown substance" (feces), which an autopsy later revealed was completely occupying and blocking Mahmoud's mouth, nose, and airways. Tr. Vol. III p. 131-32, Vol. IV p. 152. That same day, Mahmoud's friends visited Taxesmart to look for him after he did not show up to mosque. They discovered that the lights were on, the safe was open, Mahmoud's keys were on the floor, and the security keyboard was hanging by its wires. They called the police.

[8] On April 25, 2016, Abd purchased a 2004 Ford Explorer for $4,274.65 in cash and paid Cherry Glen Apartments $1,073. From April 27-28, 2016, Ziad sent $3,500 to Iraq (his home country) and later paid Cherry Glen Apartments $765. On May 3, 2016, Ziad bought a house in Detroit for $35,679.52 in cash and paid the remaining balance ($4,700) on his Toyota Camry.

[9] On May 25, 2016, the police arrested Ziad and Abd. The police discovered $5,322 in Ziad's pocket and $270 in Abd's wallet. Additionally, in Ziad and Abd's apartment, the police found that there were two pillow cases missing from a bed set with colors matching the colors of the pillow case found wrapped around Mahmoud's head. On July 26, 2016, the State charged Abd with murder, felony murder, and Level 2 felony robbery resulting in serious bodily injury. The State jointly tried Abd and Ziad from February 12-22, 2018.

[10] At the jury trial, neither Abd nor Ziad objected when the landlord for Sawmill testified to the condition of the apartment after they were evicted. Also, neither objected when the same landlord testified about their verbally abusive and aggressive behavior. At the conclusion of the trial, the trial court provided the jury with the following instruction:

> If the evidence lends itself to two reasonable interpretations, you must choose the interpretation consistent with the Defendant's innocence. If there is only one reasonable interpretation, you must accept that interpretation and consider the evidence with all the other evidence in the case in making your decision.
>
> To overcome the presumption of innocence, the State must prove the Defendant guilty of each element of the crime charged, beyond a reasonable doubt.

Appellant's App. Vol. III p. 136. Neither Abd nor Ziad objected to this instruction or requested a jury instruction that said the evidence must exclude every reasonable theory of innocence. The jury found Abd guilty as charged.[4]

[11] At the March 13, 2018, sentencing hearing, the trial court vacated the conviction for felony murder and reduced the Level 2 felony robbery conviction to a Level 5 offense to avoid a double jeopardy violation. The trial court sentenced Abd to consecutive terms of sixty-five years for the murder conviction and six years for the robbery conviction, for an aggregate sentence of seventy-one years of incarceration. Abd now appeals.

# Discussion and Decision

# I. Sufficiency of Evidence

[12] First, Abd argues that there is insufficient evidence supporting the convictions. When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to reweigh the evidence or to judge the credibility of the

---

[4] Though the State jointly tried and convicted both Abd and Ziad, this appeal concerns only Abd's convictions. This Court is currently considering Ziad's appeal in a separate matter under Cause No. 18A-CR-00782.

witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005). Furthermore, a criminal conviction may properly rest entirely upon circumstantial evidence. *Hampton v. State*, 961 N.E.2d 480, 486 (Ind. 2012).

[13]    To convict Abd of murder, the State was required to prove beyond a reasonable doubt that Abd (1) knowingly or intentionally (2) killed another human being. I.C. § 35-42-1-1. To convict Abd of Level 5 felony robbery, the State was required to prove beyond a reasonable doubt that Abd (1) knowingly or intentionally (2) took property (3) from another person or from the presence of another person (4) by using or threatening the use of force on any person or by putting any person in fear. I.C. § 35-42-5-1(a).

[14]    First, as to the murder conviction, the record shows that Abd was sitting in his Ford Taurus facing Taxesmart the night that Mahmoud was robbed and murdered. The record also shows that a white car and a black car—very similar in appearance to Ziad and Abd's cars—appeared at the Airport Office Center where Mahmoud's corpse was discarded. A reasonable trier of fact could conclude that these cars were the Ford Taurus and Toyota Camry that Abd and Ziad owned, respectively, thereby placing them at the spot where Mahmoud's corpse was found the next morning. Additionally, the fingerprint found on Mahmoud's safe partially matched Abd's. Mahmoud was found dead with a purple pillow case wrapped around his head and secured with Duck brand duct tape. Abd had recently purchased duct tape before the murder, and the purple pillow case's pattern and color matched the pattern and color of the pillow

cases missing from Ziad and Abd's bedding set. A reasonable trier of fact could then conclude that Abd had used the pillow case and duct tape to kill Mahmoud. Therefore, the evidence is sufficient to support the murder conviction.

[15] Second, as to the robbery conviction, the record reveals that before this incident, Abd and Ziad had small incomes and were not able to make timely car or rent payments. A reasonable trier of fact could conclude that Abd had the financial incentive to rob someone like Mahmoud, whom he knew, for pecuniary gain. Cell phone records indicate that during the early morning hours of Mahmoud's robbery and murder, Abd and Ziad were somewhere at or near Taxesmart. Furthermore, Abd and Ziad travelled to Detroit immediately after the time of the murder and then returned to Indianapolis a few days later. Abd and Ziad were able to purchase a house in Detroit, pay off existing bills, send money to family in Iraq, and finish paying off their vehicles. Based on this evidence, a reasonable trier of fact could conclude that Abd had the intent to rob Mahmoud, was at Taxesmart at the time of the robbery, and committed the robbery, using the proceeds as described herein. In sum, the evidence is sufficient to support the robbery conviction.

# II. Admission of Evidence

[16] Second, Abd argues that the trial court improperly admitted character evidence related to his smoking habits, dirty apartment, prior bad acts, and aggressive attitude because its prejudicial effect outweighed its probative value.

[17]     When there is a challenge to a trial court's admission of evidence, we will reverse only where the decision is clearly against the logic and effect of the facts and circumstances before it. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). However, Abd did not object to the introduction and admission of this evidence at trial. Therefore, we may review the admission of such evidence only for fundamental error. *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). "The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006) (internal quotations omitted).

[18]     Indiana Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." In other words, even if particular evidence is probative and could assist a jury in reaching its decision, the trial court can still exclude the admission of said evidence if it believes that the evidence will prejudice one party for any of the aforementioned reasons. Furthermore, Indiana Rules of Evidence 404(a)(1) and 404(b)(1) prohibit the introduction of specific character traits or bad acts to prove that in this instance, the defendant acted in conformity with those traits or prior bad acts.

[19] While a foundation of our system of jurisprudence is that the State may not punish a person for his character, *Penley v. State*, 506 N.E.2d 806, 808 (Ind. 1987) (highlighting the dangers of letting a jury convict and deprive someone of his rights based solely on inferences of bad character and past mistakes), we cannot say in this instance that the trial court committed fundamental error by admitting the evidence related to Abd's smoking habits, dirty apartment, prior bad acts, and aggressive attitude.

[20] Indiana Rule of Evidence 404(b)(2) permits the admission of character evidence or evidence of prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." It is conceivable that the State proffered evidence of Abd's living habits and attitude to demonstrate why he wanted to rob and murder Mahmoud in the first place. Due to his dire financial straits and poor living habits, Abd had the motive and intent to rob someone close to him whom he knew was financially successful. Evidence of Abd's poor living conditions reflected his inability to maintain a clean home and his desire to rob someone else for wealth. After all, as the State points out, Abd and Ziad were able to secure better housing, pay off their debts, and improve their lives following Mahmoud's murder. While evidence used solely to defame someone's character to prove that he is more apt to commit a crime is prohibited, *Rhodes v. State*, 771 N.E.2d 1246, 1253 (Ind. Ct. App. 2002), evidence used to show motive is acceptable. We find that the admission of this evidence did not constitute fundamental error because it did not amount to a blatant violation of basic principles that denied Abd fundamental due process.

Moreover, even if the trial court erroneously admitted this evidence, it was, at most, harmless error. We cannot hold that this isolated evidence of Abd's living habits and negative attitude significantly impacted the jury's decisionmaking, in light of the significant, independent evidence that could lead a reasonable trier of fact to convict Abd of both murder and felony robbery. Plus, the landlord's testimony was extensive, and he primarily discussed Abd's inability to make payments on time. The testimony in contention surfaced only once in a trial that took nearly ten days and involved multiple witnesses and exhibits. *See Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind. 1995) (holding that the trial court's admission of a negative statement is harmless error when there is sufficient, independent evidence of guilt). Thus, we do not find that the trial court committed fundamental error by admitting this evidence.

# III. Jury Instruction

Finally, Abd argues that the trial court erroneously provided an incomplete jury instruction. More specifically, Abd claims that the trial court should have instructed the jury that the evidence had to overcome every reasonable theory of innocence.

At trial, Abd neither objected to the instruction nor asked for a new one. Therefore, we will only reverse if the instruction amounted to fundamental error. *Hopkins v. State*, 759 N.E.2d 633, 638 (Ind. 2001). For an error to be fundamental, it must be "so prejudicial to the rights of a defendant as to make a fair trial impossible." *Id*.

[23]     Once again, the contested jury instruction reads as follows:

> If the evidence lends itself to two reasonable interpretations, you must choose the interpretation consistent with the Defendant's innocence. If there is only one reasonable interpretation, you must accept that interpretation and consider the evidence with all the other evidence in the case in making your decision.
>
> To overcome the presumption of innocence, the State must prove the Defendant guilty of each element of the crime charged, beyond a reasonable doubt.

Appellant's App. Vol. III p. 136. Abd alleges that the trial court erred when it did not include a reasonable theory of innocence instruction as mandated by our Supreme Court in *Hampton v. State*, 961 N.E.2d 480, 486 (Ind. 2012); *see also Hawkins v. State*, 100 N.E.3d 313, 316 (Ind. Ct. App. 2018).

[24]     In *Hampton*, our Supreme Court discussed at length why trial courts must include this jury instruction in particular circumstances:

> [B]ecause Indiana jurisprudence recognizes the importance of such an instruction in certain cases involving circumstantial evidence but our case law reveals a reluctance to find reversible error for failure to give the instruction if there is substantial direct evidence of guilt, we . . . direct that the "reasonable theory of innocence" instruction is appropriate only where the trial court finds that the evidence showing that the conduct of the defendant constituting the commission of a charged offense, the *actus reus*, is proven exclusively by circumstantial evidence. As discussed above, to deny the availability of a "reasonable theory of innocence" instruction whenever there is *any* direct evidence of the fact that a criminal offense has occurred, however, could render the instruction unlikely ever to be used, but requiring the instruction whenever there is *no* direct evidence of any single element would compel its use in almost all criminal cases because *mens rea* is often shown *only* by circumstantial evidence.

> We thus hold that, when the trial court determines that the defendant's conduct required for the commission of a charged offense, the *actus reus*, is established exclusively by circumstantial evidence, the jury should be instructed as follows: *In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence.*

*Hampton*, 961 N.E.2d at 490-91 (emphases in original). Thus, the requirement to provide this reasonable theory of innocence instruction turns on whether the trial court determines that the evidence of the defendant's criminal conduct is exclusively circumstantial. If the trial court makes that determination, it is then required to provide this reasonable theory of innocence instruction so that the jury exercises "particular caution when considering whether to find guilt based solely on crucial circumstantial evidence[.]" *Id*. at 490.

[25] Here, because Abd did not request this jury instruction, the trial court was never called upon to consider whether the evidence used to show criminal conduct under either the robbery or murder statutes was exclusively circumstantial. *See generally* Appellant's App. Vol. III p. 91-143. As a result, the trial court did not make a *Hampton* determination.

[26] Because the trial court was not asked to determine that the evidence used to convict Abd was exclusively circumstantial, it was under no obligation to give the reasonable theory of innocence jury instruction. *See Hawkins*, 100 N.E.3d at 318 (reversing the trial court's ruling only after determining that it had reached the wrong conclusion about whether the proffered evidence was purely

circumstantial). As our Supreme Court reasoned above, only when the trial court finds that the evidence used to prove criminal conduct is exclusively circumstantial is it then obligated to provide the reasonable theory of innocence instruction. *Hampton*, 961 N.E.2d at 490. This Court will not qualitatively define which evidence in the record was circumstantial and which was direct after the trial court reached no such conclusion itself. *Id.* at 491 (holding that "[w]hether an instruction is supported by the evidence is a matter for the trial court to determine[]"). Such a task "is already the province of the trial [court] in deciding whether such instruction is required in light of the nature of the evidence presented." *Id.* at 489. And in this case, the trial court was not asked to make such an evidentiary determination.

[27] Because Abd contends that the evidence used to prove criminal conduct was exclusively circumstantial in nature, it was incumbent upon him to request this instruction, forcing the trial court to make a determination on the nature of the evidence. Or, if Abd was then unsatisfied with the instruction provided, he should have objected and then explained why the reasonable theory of innocence instruction was warranted. Given that Abd did not raise the issue and that, as a result, the trial court did not make a *Hampton* determination, it was not obligated to provide the reasonable theory of innocence instruction. Thus, we find that the trial court did not commit fundamental error.

[28] The judgment of the trial court is affirmed.

Robb, J., and Pyle, J., concur.