## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 16 2019, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keevin G. Rassi, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 16, 2019 <br><br> Court of Appeals Case No. 19A-CR-459 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Gretchen S. Lund, Judge <br><br> Trial Court Cause No. 20D04-1804-CM-918 |

**Crone, Judge.**

# Case Summary

Following a bench trial, the court found Keevin G. Rassi guilty of class A misdemeanor operating a vehicle while intoxicated ("OWI") and class B misdemeanor leaving the scene of an accident. The court imposed concurrent sentences of one year and 180 days, respectively, all suspended to probation. Rassi contends that his convictions are not supported by sufficient evidence and that his sentence is inappropriate in light of the nature of the offenses and his character. We agree with Rassi that his leaving the scene of an accident conviction is not supported by sufficient evidence and therefore reverse that conviction. In all other respects, we affirm.

# Facts and Procedural History

The facts most favorable to the trial court's judgment are as follows. At 1:45 a.m. on April 22, 2018, Bristol Police Department Officer Jerrid Arnold was driving westbound on U.S. Highway 20 and approached the intersection of County Road 27. At the northeast corner of the intersection, he saw a pickup truck with its headlights on approximately five feet off the roadway in a ditch owned by the Elkhart County Highway Department. The officer continued westbound on Highway 20 "until [he] could safely turn around, then [he] went back to the intersection to check on the vehicle[,]" which was facing southeast. Tr. at 14. When he returned to the truck, its headlights were off. Officer Arnold looked inside the truck and smelled the odor of "burnt rubber inside the cabin of the vehicle." *Id*.

[3] The roadside area north of Highway 20 is "a marsh." *Id*. at 15. "It has standing water, it has cattails, it's overgrown, it's muddy[.]" *Id*. Officer Arnold saw that "vegetation had been knocked over" and also saw "fresh" ruts "about a foot deep and about […] four foot in length" where the truck "had attempted to […] spin out and […] free itself." *Id*. at 16, 15. The road surface was dry, and Officer Arnold saw one set of "fresh wet footprints that left the vehicle and headed northbound on County Road 27." *Id*. at 16. The footprints led "to a residence on the west side of the roadway." *Id*. at 17. The officer also saw tire marks on the road that led to the residence, which was owned by Logan Hartsough. The driveway of the residence had "burnout marks in it." *Id*. at 41. Officer Arnold saw Rassi walking to the front door of the residence, which "was approximately 40 to 50 yards north of" the accident site. *Id*. at 18.

[4] Rassi's "pants were wet from about the knee down" and had mud and "cattail fur" on them. *Id*. The tread pattern of his boots matched that of the wet footprints on the road. Officer Arnold saw that Rassi "had glassy, bloodshot eyes" and "swayed on occasion[.]" *Id*. He also had "slurred speech" and "smelt of an alcoholic beverage." *Id*. at 20. Officer Arnold asked Rassi "if he had crashed his vehicle." *Id*. at 19. Rassi was "very uncooperative." *Id*. at 19. The officer handcuffed Rassi and conducted a patdown search, which uncovered a set of keys to the truck in his right front pocket.

[5] Officer Arnold asked Rassi to perform three field sobriety tests, all of which he failed. Rassi refused to take a certified breath test. Officer Arnold read him his *Miranda* rights, and Rassi replied that "he would not answer questions." *Id*. at

51. Officer Arnold obtained a search warrant for a blood draw, which revealed a blood alcohol concentration of .182. As the officer transported Rassi to jail, Rassi "made the unprovoked statement that he had had six beers." *Id*. at 45.

[6] The State charged Rassi with class A misdemeanor OWI and class B misdemeanor leaving the scene of an accident. At Rassi's bench trial, Hartsough testified that he and Rassi had been listening to loud music and drinking "in excess" at Hartsough's home that evening and that he told Rassi "he needed to stay." *Id*. at 64. Hartsough told Rassi that he had an air mattress that he would blow up for him, and he went to the garage to turn his air compressor on. At that time, Rassi's truck was parked in Hartsough's driveway. Hartsough "brought the air hose in, and proceeded to blow up the mattress and at that point, [Rassi] had stepped outside[,]" presumably to smoke a cigarette. *Id*. at 65. "Maybe a little bit more than five minutes" after Hartsough went to get the mattress, Hartsough saw "red and blue lights" on the wall as he was inflating the mattress. *Id*. at 73, 66. He "went to the door" and saw "police officers, squad cars outside[.]" *Id*. at 66. He also saw Rassi "in the road" and Rassi's "vehicle farther down the road." *Id*. Hartsough is "completely deaf on the right hand side[,]" so he could not have heard Rassi's truck leave the driveway "if the stereo was on or the compressor was on, or the multitude of both[.]" *Id*. at 72.

[7] The trial court found Rassi guilty as charged and sentenced him to concurrent terms of one year for the class A misdemeanor and 180 days for the class B misdemeanor, all suspended to probation. This appeal followed.

# Discussion and Decision

## Section 1 – Rassi's OWI conviction is supported by sufficient evidence.

Rassi asserts that his convictions are not supported by sufficient evidence. "When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Abd v. State*, 121 N.E.3d 624, 629 (Ind. Ct. App. 2019), *trans. denied*. "It is not our job to reweigh the evidence or to judge the credibility of the witnesses, and we consider any conflicting evidence most favorably to the trial court's ruling." *Id*. "Furthermore, a criminal conviction may properly rest entirely upon circumstantial evidence." *Id*. "It is not necessary that the evidence overcome every reasonable hypothesis of innocence." *Hopson v. State*, 95 N.E.3d 531, 533 (Ind. Ct. App. 2018). "The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment." *Id*.

To convict Rassi of class A misdemeanor OWI, the State had to establish beyond a reasonable doubt that he operated a vehicle while intoxicated in a manner that endangered a person. Ind. Code § 9-30-5-2(b). Rassi first contends that the State failed to prove that he operated his truck. The abovementioned circumstantial evidence that Rassi operated his truck is overwhelming, and we may not reweigh that evidence in his favor. He also contends that the State failed to prove that he operated his truck in a manner that endangered a person.

Section 9-30-5-2 "requires more than intoxication to prove endangerment." *Burnett v. State*, 74 N.E.3d 1221, 1225 (Ind. Ct. App. 2017) (quoting *Dorsett v. State*, 921 N.E.2d 529, 532 (Ind. Ct. App. 2010)). "The element of endangerment can be established by evidence showing that the defendant's condition or operating manner could have endangered any person, including the public, the police, or the defendant." *Id.* The State showed that Rassi drove his truck off the road and into a ditch; this evidence was sufficient to establish that he operated his vehicle in a manner that could have endangered himself. Therefore, we affirm his conviction for class A misdemeanor OWI.

## Section 2 – Rassi's leaving the scene of an accident conviction is not supported by sufficient evidence.

[10]     Indiana Code Section 9-26-1-1.1 reads in pertinent part,

> (a) The operator of a motor vehicle involved in an accident shall do the following:
>
> > (1) Except as provided in section 1.2 of this chapter, the operator shall immediately stop the operator's motor vehicle:
> >
> > > (A) at the scene of the accident; or
> > >
> > > (B) as close to the accident as possible;
> >
> > in a manner that does not obstruct traffic more than is necessary.

(2) Remain at the scene of the accident until the operator does the following:

> (A) Gives the operator's name and address and the registration number of the motor vehicle the operator was driving to any person involved in the accident.

> (B) Exhibits the operator's driver's license to any person involved in the accident or occupant of or any person attending to any vehicle involved in the accident.

….

(4) If the accident involves a collision with an unattended vehicle or damage to property other than a vehicle, the operator shall, in addition to the requirements of subdivisions (1) and (2):

> (A) take reasonable steps to locate and notify the owner or person in charge of the damaged vehicle or property of the damage; and

> (B) if after reasonable inquiry the operator cannot find the owner or person in charge of the damaged vehicle or property, the operator must contact a law enforcement officer or agency and provide the information required by this section.

An operator of a motor vehicle who knowingly or intentionally fails to comply with this subsection commits class B misdemeanor leaving the scene of the accident. Ind. Code § 9-26-1-1.1(b).

In its charging information, the State alleged in pertinent part that Rassi damaged unspecified "property of [the] Elkhart County Highway Department"[1] and failed to "take reasonable steps to locate and notify the owner or person in charge of the damaged property[.]" Appellant's App. Vol. 2 at 17. Rassi argues that "[t]here is simply insufficient evidence to establish that [he] was involved in an accident that resulted in property damage." Appellant's Br. at 17. He further argues that, "[d]ue to the quickness in which the police were at the scene, [he] was never given the opportunity to take reasonable steps to identify the owner of any damaged property and notify them accordingly." *Id*. at 16.

Assuming, without deciding, that Rassi damaged the property of the Elkhart County Highway Department by gouging large ruts in the ditch, we agree with Rassi that he did not have an opportunity to take reasonable steps to locate and notify the Highway Department of the damage. Hartsough's undisputed testimony establishes that approximately five minutes (or less) elapsed between Rassi driving his truck into a ditch and his apprehension by police outside Hartsough's home in the middle of the night. Under these circumstances, we cannot conclude that Rassi had sufficient time to take reasonable steps to locate and notify the owner of the damaged ditch. Consequently, we reverse his conviction for leaving the scene of an accident.

---

[1] Rassi did not assert below, and does not assert on appeal, that the charging information is unconstitutionally vague.

## Section 3 – Rassi has failed to establish that his sentence for OWI is inappropriate in light of the nature of the offense and his character.

[13]     Finally, Rassi asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. "Sentence review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[W]hen reviewing a sentence, our principal role is to 'leaven the outliers' rather than necessarily achieve what is perceived as the 'correct' result." *Id*. (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Id*. "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *McFall v. State*, 71 N.E.3d 383, 390 (Ind. Ct. App. 2017). "In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge." *Id*. The burden is on Rassi to persuade us that his sentence is inappropriate. *McFall*, 71 N.E.3d at 390.

[14]    The maximum sentence for a class A misdemeanor is one year of imprisonment. Ind. Code § 35-50-3-2.[2] Rassi received a one-year sentence for his class A misdemeanor conviction, but it was all suspended to probation. Rassi argues that this offense was not especially egregious. We agree, and the trial court's imposition of a fully suspended sentence properly reflects the nature of the offense.

[15]    He further argues that his character merits a reduced sentence. "A defendant's life and conduct are illustrative of his or her character." *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied* (2019). "Even a minor criminal record reflects poorly on a defendant's character, and the significance of the prior record varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Id*. (citation and quotation marks omitted). Rassi, who was born in 1983, was convicted of class A misdemeanor marijuana possession in 2002 and was sentenced to one year of probation; he violated probation twice and received an unsatisfactory discharge. In 2006, he was charged with class D felony marijuana possession; the trial court elected to enter judgment of conviction as a class A misdemeanor and imposed a sentence of one year "good behavior status[.]" Appellant's App. Vol. 2 at 58. Rassi later admitted to violating that status but ultimately received a satisfactory discharge

---

[2] Contrary to the State's suggestion, there are no advisory sentences for misdemeanors. *Cf*. Appellee's Br. at 17 ("While Defendant was not sentenced to the advisory sentence on both counts ….").

from probation in March 2010. He was not charged with any other offenses until this proceeding.

[16] Although Rassi apparently lived a law-abiding life for eight years after he was discharged from probation, his prior substance-related encounters with the criminal justice system reflect poorly on his character. Given his criminal history and multiple probation violations, Rassi has not met his burden of persuading us that his one-year suspended sentence is inappropriate in light of the nature of the offenses or his character. Therefore, we affirm his sentence.

[17] Affirmed in part and reversed in part.

Baker, J., and Kirsch, J., concur.